HELEN M. DUNHAM, as Administratrix of the Estate of CHARLES L. DUNHAM, Deceased, Appellant, *v.* VILLAGE OF CANISTEO et al., Respondents.

Argued October 16, 1951; decided March 13, 1952.

*Albert Hollis* and *Wilbur F. Knapp* for appellant. I. The negligence of defendants was established by the evidence and the verdict in favor of plaintiff should be sustained. II. Defendants' negligence was a question of fact for the jury. (*Slater* v. *Illinois Cent. R. Co.*, 209 F. 480; *Whitesides* v. *Southern R. R. Co.*, 128 N. C. 229; *Eddy* v. *Village of Ellicottville*, 35 App. Div. 256; *Robischon* v. *City of Utica*, 257 App. Div. 1036.) III. There was no evidence of contributory negligence except the possible question of drinking and this was a question of fact for the jury and they properly resolved this question in favor of plaintiff. Defendant had the burden of proof on this question. IV. The medical testimony was more than a scintilla of evidence and was sufficient to make a question of fact for the jury. (*McCahill* v. *New York Transp. Co.*, 201 N. Y. 221; *Turner* v. *Nassau Elec. R. R. Co.*, 41 App. Div. 213; *Lang* v. *Stadium Purchasing Corp.*, 216 App. Div. 558; *Coleman* v. *Ruggles-Robinson Co.*, 159 App. Div. 268.)

*W. Earle Costello* and *Morris H. Barash* for respondents. I. Plaintiff failed to establish sufficient facts to make out a prima facie case that defendants were guilty of some breach of

a duty owed plaintiff's intestate. (*Di Biase* v. *Ewart & Lake, Inc.,* 228 App. Div. 407.) II. Decedent was guilty of contributory negligence. (*Lee* v. *City Brewing Corp.,* 279 N. Y. 380; *Porter* v. *New York City Interborough Ry. Co.,* 235 App. Div. 525, 261 N. Y. 587; *Sweeney* v. *Thompson Starrett Co.,* 246 App. Div. 224, 272 N. Y. 485; *Sackheim* v. *Pigueron,* 215 N. Y. 62.) III. Plaintiff failed to establish any causal relation between any act or omission to act on the part of defendants and the development of the pneumonia which ultimately caused decedent's death. (*McDonald* v. *Metropolitan St. Ry. Co.,* 167 N. Y. 66; *Matter of Case,* 214 N. Y. 199; *Joergens* v. *State of New York,* 244 App. Div. 867; *Loes* v. *Poll & Co.,* 242 App. Div. 729; *Seifter* v. *Brooklyn Heights R. R. Co.,* 169 N. Y. 254; *Laidlaw* v. *Sage,* 158 N. Y. 73.)

CONWAY, J. At about 4:45 of the afternoon of March 3, 1949, a windy, freezing day — the plaintiff's intestate, Charles Lee Dunham, a man seventy-six years of age, was found on the floor of the fire station of the village of Canisteo, New York, by the village fire commissioner. The latter asked him if he was hurt but his answer was incoherent and he appeared to be suffering from the cold. The commissioner immediately reported the situation to the mayor of the village, who notified the chief of police, Harold Stephens. Those men together with the superintendent of streets of the village returned to the fire station and found the decedent in about the same position on the floor, apparently unconscious or sleeping. They carried him to the village jail and placed him first on the floor of the jail and then on a cot in one of the cells. While lying on the floor of the jail, the decedent stated he had fallen in front of the Red Front grocery store. He complained of his hip, but said he did not wish a doctor.

It appears that decedent and his son had driven that morning from their farm to attend a cattle auction sale in Bath, New York, a distance of about twenty miles. On their return in the afternoon, they stopped at the farm of a friend, one Sills, for about twenty minutes. There a bottle of whiskey which the decedent had previously purchased was opened and Mr. Sills and the decedent each had one drink, after which the decedent put

the bottle back in his pocket. At about 4:00 P.M. the deceased and his son left the Sills' farm and proceeded to Canisteo. The father alighted in front of the post-office building and said he would stay in the village and ride home with one of the neighbors.

Apparently the only person who saw Mr. Dunham between that time and the time he was found at the fire station, forty-five minutes later, was one Aaronson, who testified that he saw the decedent walking through an alley back of Aaronson's place of business, hanging on to a stick or cane, staggering from one side to the other, and that in his opinion the deceased was intoxicated.

After taking the decedent to jail, the mayor and the police chief decided that no charge should be placed against him, since, although he appeared to them to be intoxicated, he had done no harm, but that they would keep him in the jail where it was warm, as he was unable to go home. The decedent was checked in his cell by either the police chief Stephens or a village police officer hourly from 5:00 P.M. on March 3d until 10:20 A.M. on March 4th.

During the night, Stocking, a railroad inspector, and one Keyes visited the jail. The inspector testified that the decedent was moaning like a man in pain and that he asked for a doctor. Keyes stated that the village police officer told him that Mr. Dunham was not intoxicated but that he appeared to be in pain or sick and that he had rheumatism and complained about his hip. The police officer testified that he had helped the decedent at different times during the night as he was unable to get up alone. When asked by one of the witnesses, between 2:00 and 3:00 on the morning of March 4th, after Mr. Dunham had asked for a doctor, why he did not get one, the officer said '' it was no use at this time of the morning and it wouldn't do any good if he did.''

Police chief Stephens, according to his testimony, became aware that Mr. Dunham was injured at about 9:00 A.M. on March 4th, when he complained that his leg hurt. Noticing that he was unable to get around, the police chief called for an ambulance. Seven days later, on March 11th, Mr. Dunham died at St. James Mercy Hospital.

The death certificate signed by the attending physician, reads as follows:

" 19. &ast; &ast; &ast;

      I. DISEASE OR CONDITION DIRECTLY LEADING TO DEATH

        (a) TERMINAL BRONCHIAL PNEUMONIA

      ANTECEDENT CAUSES DUE TO

        (b) FRACTURE RIGHT HIP

        (c) FRACTURE RIGHT ELBOW

   22d. TIME OF INJURY

        3/3/49 FELL ON SIDEWALK ".

This action was instituted to recover damages for the death of Mr. Dunham and for his pain and suffering prior thereto, by reason of the negligence of the Village of Canisteo and police chief Stephens in failing to obtain medical care for the decedent for eighteen hours after they had taken him to the village jail.

At Trial Term a jury awarded a verdict to plaintiff-appellant. The Appellate Division reversed the judgment entered on the law and facts and dismissed the complaint upon the ground that plaintiff-appellant had failed to present evidence that the delay in providing medical attendance to her intestate was a competent producing cause of the pneumonitis which caused his death.

Two questions are presented: First, was the Village of Canisteo, acting through its officers, particularly its chief of police, guilty of negligence in failing to ascertain for some eighteen hours, while the decedent lay on a cot in the village jail, that he had been injured and was in need of medical attention? Second: If the Village of Canisteo and Stephens were negligent, was that negligence the proximate cause of decedent's death?

Under the circumstances, the village authorities, having assumed charge of the deceased when he was incoherent and unable to represent himself, were under an obligation to exercise ordinary care. (Harper on Torts, § 81; cf. *Eddy* v. *Village of Ellicottville,* 35 App. Div. 256, where negligence of the village under similar circumstances was recognized although it was not charged with liability because it was exercising a governmental

function.)[1] The care required in the instant case included the procurement of medical assistance, if the village officials knew or should have known that the deceased was hurt or injured and in need of a doctor. (*Slater* v. *Illinois Cent. R. Co.,* 209 F. 480.)

The evidence on this point is conflicting. The testimony of the village officials, chief of police Stephens, the mayor, the fire commissioner and the superintendent of streets, all interested witnesses, was to the effect that the decedent when found, appeared to be intoxicated and that he stated in answer to queries as to how he was feeling that he was in pain and that the pain was due either to a hip injury, rheumatism, or arthritis and that he did not wish a doctor. On the other hand, other witnesses testified that deceased was not intoxicated and that, in addition to being in pain, he was in need of and asked for a doctor.

Since the reversal by the Appellate Division was upon the law and the facts and the complaint was dismissed, we are required to give plaintiff-appellant the benefit of every favorable inference that may be drawn from the record. (*De Wald* v. *Seidenburg,* 297 N. Y. 335, 336–337.) If there is evidence from which the negligence of the defendants may be reasonably inferred, the question was properly one for the jury. (*Betzag* v. *Gulf Oil Corp.,* 298 N. Y. 358, 362.) Our examination of the record has disclosed evidence upon which the jury could find that the village authorities, if they did not know the nature and extent of the decedent's injuries, knew at least that he was in pain, that he had fallen down, and that he was in need of medical attention. With such knowledge, under the circumstances, the village authorities were under a duty to obtain medical care for the deceased.

The defendants, however, deny liability on the ground that the delay in providing medical attention was not a competent producing cause of the pneumonitis which resulted in death. They take the position that the deceased might have developed pneumonia and died even if he had been taken to the hospital or given medical aid immediately upon being found on the floor

---

[1] Note that municipal corporations no longer enjoy sovereign immunity. (*Bernardine* v. *City of New York,* 294 N. Y. 361, 365; *McCrink* v. *City of New York,* 296 N. Y. 99.)

of the fire station; that he might have died from the effects of the bone fractures or from the effects of his exposure to the cold weather.

It is, of course, well settled in this State that when there are several proximate or efficient causes contributing to death, the death may be attributed to any or all of those causes. (*Foley* v. *State of New York,* 294 N. Y. 275, 280; *Sweet* v. *Perkins,* 196 N. Y. 482; *Pierce* v. *Atlantic, Gulf & Pacific Co.,* 216 N. Y. 209; Restatement, Torts, § 879.) The fact that the bone injuries and subsequent pneumonitis in the instant case might have eventuated in decedent's death without the alleged negligent acts of the village authorities, does not for that reason render the rule inapplicable. (*McCahill* v. *New York Transp. Co.,* 201 N. Y. 221.)

Whether or not the evidence established that the delay of eighteen hours on the part of the village authorities was a competent producing cause of the death of the decedent is largely dependent upon the expert medical testimony of Dr. Otto K. Stewart, the attending physician. He was asked a long hypothetical question, concluding as follows: " * * * are you able to express an opinion, with reasonable certainty, as to whether the delay of eighteen hours from the time he [the decedent] received the injuries until he received medical attention was a competent producing cause of the pneumonitis which you testified to?" He replied that in his opinion it was a reasonable medical certainty that the delay of eighteen hours contributed to Mr. Dunham's death. He testified also that early treatment in injury cases is an important factor. On the other hand, he stated that, even if Mr. Dunham had had the best available medical treatment at 4:45 on the afternoon of March 3d, he might have developed pneumonia six days after he arrived at the hospital and died from it.

The defendants urge that the doctor's testimony was not sufficiently definite; that he was not inclined to venture a positive medical opinion as to whether or not the delay in procuring medical assistance was a competent producing cause of Mr. Dunham's death. We are satisfied, however, that the main point of his testimony was to the effect that the delay of eighteen hours did contribute to this man's death.

The sufficiency of the testimony of Doctor Stewart is sustained by our decision in *McCahill* v. *New York Transp. Co.* (*supra*). In that case the plaintiff's intestate suffered a broken thigh and knee injury when he was struck by a taxicab. He died two days after the accident of delirium tremens. A physician testified (pp. 222–223): "I should say with reasonable certainty the injury precipitated his attack of delirium tremens, and understand I mean precipitated, not induced". Again the doctor testified that in his opinion, "the injury to the leg and the knee hurried up the delirium tremens." He also stated: "He might have had it (delirium tremens) anyway. Nobody can tell that." It was urged in the *McCahill* case that decedent's alcoholism might have caused delirium tremens and death at a later date even if he had not been injured by the taxicab. Similarly, in the instant case, it is argued that the decedent might have developed pneumonia and, as Dr. Stewart admitted, died, even if he had been taken to a hospital immediately. In disposing of the argument in the *McCahill* case we said (pp. 223–224): "The principle has become familiar in many phases that a negligent person is responsible for the direct effects of his acts, even if more serious, in cases of the sick and infirm as well as in those of healthy and robust people, and its application to the present case is not made less certain because the facts are somewhat unusual and the intestate's prior disorder of a discreditable character. (*Tice* v. *Munn*, 94 N. Y. 621; *Crank* v. *Forty-second Street, M. & St. N. Ave. Ry. Co.*, 53 Hun, 425; affd., 127 N. Y. 648; *Allison* v. *C. & N. W. R. Co.*, 42 Iowa, 274; *Owens* v. *K. C., S. J. & C. B. Ry. Co.*, 95 Mo. 169, 182.) The principle is also true although less familiar, that one who has negligently forwarded a diseased condition and thereby hastened and prematurely caused death cannot escape responsibility even though the disease probably would have resulted in death at a later time without his agency. It is easily seen that the probability of later death from existing causes for which a defendant was not responsible would probably be an important element in fixing damages, but it is not a defense."

The question here is whether the defendants' acts or omissions to act substantially contributed to the decedent's death. We stated the applicable rule in *Cornbrooks* v. *Terminal Barber Shops* (282 N. Y. 217, 223, LEWIS, J.): "It is not

enough that the defendant, in an effort to break the chain of causation, should prove that plaintiff's injury *might* have resulted from other possible causes, nor is it required of the plaintiff that he eliminate by his proof all other possible causes. ' The existence of remote possibilities that factors other than the negligence of the defendant may have caused the accident, does not require a holding that plaintiff has failed to make out a *prima facie* case. It is enough that he shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred.' (*Ingersoll* v. *Liberty Bank of Buffalo,* 278 N. Y. 1, 7.) '' (Emphasis in original.)

Here the evidence disclosed facts and conditions from which the negligence of the defendants and the causation of the decedent's death by that negligence may be reasonably inferred. Upon all the evidence, we are satisfied that whether or not defendants' negligence was a competent producing cause of the pneumonitis which resulted in the death of the deceased was a question of fact for determination by the jury. We cannot say as a matter of law, in view of the doctor's testimony, that the delay in this case of eighteen hours commencing shortly after serious injury to a man seventy-six years of age was not a substantial factor for the jury to consider in determining the cause of his death.

The judgments should be reversed and a new trial granted, with costs to abide the event.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Judgments reversed, etc.