MAX SCHUSTER, as Administrator of the Estate of ARNOLD L. SCHUSTER, Deceased, Appellant, *v.* CITY OF NEW YORK, Respondent.

Second Department, June 30, 1955.

*Harry H. Lipsig* and *Joseph N. Friedman* for appellant.

*Peter Campbell Brown, Corporation Counsel (Fred Iscol* and *Seymour B. Quel* of counsel), for respondent.

*Per Curiam.* Plaintiff seeks damages claimed to have been sustained because of the failure of the police to protect adequately his intestate from violence after the latter had informed the police of the whereabouts of a notorious criminal who was then arrested. It is alleged that the police were notified of threats against intestate's person and life, but withdrew protection and refused to grant protection after request. Recovery is sought also because the police falsely represented to the intestate that he was not in danger because of the threats, whereby he was induced to go on to a public highway where he was shot.

When the State waived its immunity from suit for acts of its servants or agents, it accompanied the waiver by a provision that its liability should be determined by the same rules of law as are applied to individuals and corporations in an action in the Supreme Court (Court of Claims Act, § 8).

The complaint does not identify intestate's slayer by name, description or as a relative or associate of the criminal informed against, or as one who had threatened harm to the intestate or his family, or one the police knew or had reason to believe would harm the intestate because he had informed as to the whereabouts of the criminal sought by the police. Neither is there allegation as to the identity of the persons who made threats or whether they were in or out of the city of New York when the threats were made. It is not alleged that the intestate was taken into protective custody by the police or that they had ordered him to report if or when he desired to leave his home, or that he advised them he was leaving his home on the day he met his death. No allegation of the complaint indicates that he was subjected to restraint by the police after the criminal had been apprehended.

No liability arose under section 1848 of the Penal Law. Injury or death did not occur while the intestate was aiding the police to arrest the criminal. The complaint states no facts which

would warrant recovery by reason of the provisions of any other statute.

There is no claim of any contractual liability. The intestate was not an employee of the police department. Neither did the police assume the duty of a guardian toward him. (Cf. *Dunham* v. *Village of Canisteo*, 303 N. Y. 498.) Any liability for the death can be predicated solely on failure to perform a duty to give intestate special protection. As a member of the general public, no duty of special protection was owed to him by the police. (*Murrain* v. *Wilson Line*, 270 App. Div. 372, affd. 296 N. Y. 845; *Steitz* v. *City of Beacon*, 295 N. Y. 51; *Rocco* v. *City of New York*, 282 App. Div. 1012.) Neither by statute nor under the Constitution nor by contract was there imposed on the sovereign State or its agents and servants a duty to give special police protection to the intestate. If there was a duty to afford him special police protection from injury after and because he had informed, such duty is court-created. (*In re Quarles and Butler*, 158 U. S. 532, 536.) If we assume, without deciding, that such duty did exist, it called for reasonable protection only against acts of violence by the criminal or his associates or agents or those who had made threats, the identity of whom the police had knowledge or notice, and which violence by such persons might reasonably have been anticipated. No fact is pleaded from which it can be inferred that the violence here was inflicted because the intestate had informed or that the police should have protected him against violence by the assailant. Nor does the complaint allege any facts or circumstances known by the police which could establish that they knew or should have known who were the persons who made the threats or that the slayer was one of such persons or that the representations as to the nature of the threats were false and not mere statements of opinion.

The order and judgment should be affirmed, without costs.

BELDOCK, J. (dissenting). At the outset it should be noted that in this case we are not concerned with the sovereign's outmoded immunity from civil liability for negligence in the performance of a governmental function. Such immunity no longer exists. Whether for a negligent act of commission or omission the sovereign is now liable to any person who, as an individual, is entitled to the proper performance of the governmental function and who has been damaged by reason of the sovereign's careless action or nonaction. Such surrender of the sovereign immunity " is broad, general and unqualified." The test of the sovereign's

liability is now precisely the same as though it were an ordinary person or corporation charged with the negligent performance of the governmental duty involved (*Runkel* v. *City of New York,* 282 App. Div. 173, 178–179, and cases there cited; *Ritter* v. *State of New York,* 204 Misc. 300, 304–307, revd. on other grounds, 283 App. Div. 833).

Accordingly, it has now become the established rule that the State or municipality may be held liable for injuries sustained due to a negligent act of commission or omission by its police officials in the course of their duties (cf. *McCrink* v. *City of New York,* 296 N. Y. 99; *Bernardine* v. *City of New York,* 294 N. Y. 361; *Slavin* v. *State of New York,* 249 App. Div. 72; *Egan* v. *State of New York,* 255 App. Div. 825; *Pacheco* v. *City of New York,* 140 N. Y. S. 2d 275, affd. 285 App. Div. 1031, and *Burns* v. *City of New York,* 141 N. Y. S. 2d 279).

In the case at bar the principal questions presented are: (1) whether under the circumstances alleged in the complaint the city owed to plaintiff's intestate a duty of personal police protection against unknown potential assailants; and (2) if it did, whether its breach of that duty may be said to be the cause of his death.

The majority base their dismissal of the complaint on two grounds: First, that the city did not owe the intestate any duty to furnish him special police protection; Second, if it be assumed that the city did owe the intestate such a duty it extended only to known or identified potential assailants who intended to harm him because of his status as an informer (to wit: his status resulting from his aid to the police which led to their apprehension of the notorious, wanted criminal at large — Willie Sutton); and, the majority point out, the complaint here fails to allege that it was such an assailant who killed the intestate. In other words, the majority's position under this second ground is that, even if it be assumed that the city owed the intestate a police duty to the limited extent indicated, there is an absence of allegation showing causal connection between the city's neglect in the performance of such limited police duty and the intestate's untimely death.

In my opinion, in the light of the allegations of the complaint — which must be accepted as true upon this demurrer motion, the city's obligation to the intestate is *not* to be measured by the requirement of " special " police protection or by the limitation of police protection against known or identified potential assailants. Rather, under the circumstances alleged as noted below, the city's obligation simply was to furnish the intestate

with such protection as would be adequate in view of his known status as an informer upon a criminal who, as a matter of common knowledge, was extremely dangerous and who, through his cohorts, would not hesitate at an opportune moment to wreak his vengeance upon the intestate — the one who was the primary cause of his unexpected apprehension and incarceration.

Among other facts, the complaint alleges that Sutton was wanted by the police; that as a result of the information which the intestate acquired on February 18, 1952, and imparted to the police, Sutton was apprehended; that the city's police department knew that Sutton " was an unusually dangerous character with an unusually dangerous group of associates and that they all had a special reputation for violence "; that the police department widely publicized the intestate's role in supplying the information which led to Sutton's capture; that thereafter the intestate and his immediate family received from anonymous persons threatening letters, missives, notes and telephone messages — of all of which the police department was informed; that the police department " initially undertook a limited and partial protection " of the intestate's place of business and home and of his immediate family but thereafter discontinued such protection; that it effected its discontinuance of the protection despite the " continuance of the anonymous letters, missives, notes and messages which threatened and menaced the life, safety and welfare " of the intestate and his immediate family, and despite its knowledge of the continuance of the said anonymous communications and of their contents; that by reason of the foregoing the police department had constructive and actual notice that the intestate's life " was threatened, endangered and in peril " and that " more than the usual care and caution was necessary " for the safety of his life; that the police department nevertheless failed, refused and neglected to supply protection to the intestate; that on March 8, 1952, the intestate was shot and killed due to the city's negligence and carelessness: (a) in exposing decedent to " peril and danger " by permitting " him to go about unguarded and unprotected "; (b) in " failing to guard and protect him ", to " supply a bodyguard for him ", and " to take due and proper precautions for his safety "; and (c) in " minimizing the dangers involved ", lulling the intestate " into a false sense of security " and " creating a false impression of safety and lack of danger ".

The city is, of course, required to furnish police protection to its inhabitants. Its charter imposes upon its police department the mandatory duty to " protect the rights of persons and prop-

erty," to "preserve the public peace," to "prevent crime," to "detect and arrest offenders" of the law, and to "suppress riots, mobs and insurrections". (New York City Charter [1938], § 435.) In the discharge of this duty the police department has made it a practice to assign a police guard or guards to protect any particular person whose life, to the knowledge of the police department, has become endangered by threats of violence, and the police department has done so over the protests of the protected person (cf. *Anastasio* v. *Monahan,* 124 N. Y. S. 2d 328, and *Matter of Polizio,* N. Y. L. J., Sept. 13, 1947, p. 445, col. 6).

In acting as an informer and in aiding the police department in the apprehension of an escaped felon, the intestate performed his solemn duty — recognized from time immemorial (cf. *Motes* v. *United States,* 178 U. S. 458, 462–463; *Nicholson* v. *United States,* 79 F. 2d 387, 389; *Matter of Babington* v. *Yellow Taxi Corp.,* 250 N. Y. 14, 16, and *Riker* v. *City of New York,* 204 Misc. 878, affd. 286 App. Div. 808).

Indeed, to encourage the practice of informing, the city's police commissioner is authorized to offer and to pay rewards "to induce any person to give information which shall lead to the detection, arrest and conviction of persons guilty of a felony", and the city's board of estimate is required to "make the necessary appropriation for such purpose". (Administrative Code of City of New York, § 434a–32.0, subd. b.)

As to every person who discharges his civic duty of informing upon a felon there arises a reciprocal duty on the part of the Government to protect the informer "from violence while so doing, or on account of so doing." (*Ex parte Yarbrough,* 110 U. S. 651, 662.) The Government extends its care and solicitude particularly to "the private citizen who assists in putting in motion the course of justice" (*In re Quarles and Butler,* 158 U. S. 532, 536; *Nicholson* v. *United States,* 79 F. 2d 387, *supra*). This self-imposed duty is a corollary to the fundamental principle that the Government, to insure its own stability, is "bound to protect against lawless violence all persons in their service or custody in the course of the administration of justice" (*Logan* v. *United States,* 144 U. S. 263, 295; *United States* v. *Patrick,* 54 F. 338, 347).

Here the city, with full knowledge of the potential danger to the intestate and in apparent recognition of its duty, at first furnished police protection to him. Later, however, it arbitrarily withdrew such protection. By such withdrawal of its protection it elected to ignore the obvious risks both implicit and explicit.

in the intestate's precarious situation. It failed not only to furnish him " special " protection; it failed to furnish him any protection. It failed to furnish him such protection as the circumstances and as ordinary prudence dictated.

If we accept as true, as we must, all the allegations of the complaint, the intestate was entitled to protection against assailants, whether of known or unknown identity. He was entitled to such protection because, under the circumstances alleged, ordinary foresight and prudence required it. In the very nature of things the identity of any potential assailant, while it might subsequently be discovered by the police in the performance of their duties, would not be known to the intestate. All that he knew, all that he could know, was that after the publication of his name as the informer, his life was menaced. The best proof of this fact, if any proof be needed, was the numerous *anonymous* communications which the intestate and his family continued to receive after the withdrawal of all police protection, which communications the intestate transmitted to the police department.

Obviously, if as a condition precedent to the city's obligation to furnish the intestate adequate police protection, he were required first to identify his would-be assailants, the city's obligation would forever remain dormant; it would never come to life. No assailant, in advance of the attack, could be expected to divulge his identity. Consequently, such a condition, practically impossible of fulfilment, should not be allowed to vitiate the city's positive duty of protection.

It should also be noted that the city is chargeable, no less than any reasonable person, with knowledge of the " peculiar habits, traits, and tendencies which are known to be characteristic of certain well-defined classes of human beings " (Restatement, Torts, § 290, p. 781). In the case at bar such " peculiar habits " would of course include the resort to violence and murder so characteristic of the well-defined gangster class upon one of whose members the intestate had the temerity to inform the police. Hence, while the advance disclosure of the identity of the intestate's would-be assailants was impossible, under the circumstances it was also unnecessary.

In brief, the city's duty to protect the intestate from all violence arises from the obvious foreseeability of danger to him in view of his precarious status as an informer, in view of the numerous anonymous threats which he and his family continued to receive, and in view of the well-known vicious, homicidal predilections of Sutton and his cohorts (all of which we must

accept as facts because alleged in the complaint). As to all these facts the city had ample notice and warning. Its protection therefore should have been proportioned to the known dangers and coextensive with them.

The city was required to exercise care " commensurate with the circumstances." It owed to the intestate a duty to exercise care " in proportion to the danger to be avoided and the consequences that might reasonably be anticipated from the neglect " (cf. *Caldwell* v. *Village of Island Park*, 304 N. Y. 268, 274, and *Flamer* v. *City of Yonkers*, 309 N. Y. 114). Where it is obvious that " ' potentiality of injury exists ' " the city is required to exercise care " ' commensurate with its reasonably probable occurrence ' " (*McCrink* v. *City of New York*, 296 N. Y. 99, 106, *supra*; cf. *Dunham* v. *Village of Canisteo*, 303 N. Y. 498).

Plainly, here, in order to be " commensurate with the circumstances " the city's duty of protection toward the intestate would have to go beyond the fulfilment of the city's duty to protect the public generally. Without attempting to define precisely the city's duty toward the intestate, such duty would require either the assignment for a reasonable period of time of a sufficient number of competent guards to protect the intestate from all potential assailants, known and unknown, or some equally effective method of protection.

In other words, it may be said that in every situation which is fraught with unusual risk of injury the sovereign's knowledge of the inherent or impending dangers of the situation imposes upon it the duty to take such police precautions as the *known* circumstances would suggest to any prudent person, namely: (a) to guard the potential victim if he be known or ascertainable and if his potential assailant be unknown or unascertainable; and (b) to deter the potential assailant if he be known or ascertainable and if his potential victim be unknown or unascertainable (cf. *Caldwell* v. *Village of Island Park, supra,* pp. 274–275; *McCrink* v. *City of New York, supra,* and *Slavin* v. *State of New York,* 249 App. Div. 72, *supra*).

Of course, if by reason of all the known circumstances the sovereign is not chargeable with notice of the inherent or impending danger in a situation, it cannot be cast in liability because of its failure to take adequate care which might have prevented the injury or death that ultimately occurred. (*Excelsior Ins. Co. of N. Y.* v. *State of New York,* 296 N. Y. 40; *Flaherty* v. *State of New York,* 296 N. Y. 342; *Williams* v. *State of New York,* 308 N. Y. 548.)

It is on this ground — the absence of knowledge of the risk or danger to any particular individual — that a municipality has been held not to be liable to a person who is damaged by its negligence in the discharge of a statutory duty owing to the general public in common, whether that duty involves the adequate maintenance of a water system or a police department (*Steitz* v. *City of Beacon*, 295 N. Y. 51; *Murrain* v. *Wilson Line*, 270 App. Div. 372, affd. 296 N. Y. 845). In such cases the municipality is not chargeable with notice of any impending danger or damage to any particular individual. Consequently, it owes him no duty beyond the duty which it owes to the public at large. Toward him it is not required to exercise any care beyond the care which it is required to exercise toward the public generally, and he has no redress against the municipality if he is damaged because of its negligence in the performance of its duty toward the general public.

In every case, however, regardless of the character of the duty involved or the source of its creation, if the municipality has notice, actual or constructive, of the potential damage or injury which may befall any individual in the event that it be negligent in the performance of its duty, and if it nevertheless acts carelessly or heedlessly or with " wanton indifference to consequences ", it may be cast in liability to that individual or to his estate (cf. *Moch Co.* v. *Rensselaer Water Co.*, 247 N. Y. 160, 169; *Dunham* v. *Village of Canisteo*, 303 N. Y. 498, 502–503, *supra*; *Eastman* v. *State of New York*, 303 N. Y. 691; *Nuss* v. *State of New York*, 301 N. Y. 768; *Foley* v. *State of New York*, 294 N. Y. 275; *Countryman* v. *State of New York*, 277 N. Y. 586, and *Runkel* v. *City of New York*, 282 App. Div. 173, *supra*).

Under the unusual circumstances here alleged in the complaint, whether the city should have anticipated the violent assault upon the intestate by some unknown assassin and should have taken adequate precautions to guard against it, and whether the city's negligence in not taking such precautions was the proximate cause of the intestate's death, are essentially jury questions; they should not be decided as questions of law (cf. *Caldwell* v. *Village of Island Park*, 304 N. Y. 268, 274, 275, *supra*; *Dunham* v. *Village of Canisteo*, *supra*, pp. 504–506, and *O'Neill* v. *City of Port Jervis*, 253 N. Y. 423, 433). It is enough if the complaint alleges " facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred " (*Ingersoll* v. *Liberty Bank of Buffalo*, 278 N. Y. 1, 7; cf. *Tortora* v. *State of*

*New York,* 269 N. Y. 167, 170). And if the facts and conditions be susceptible of two inferences: an inference that the intestate's death was caused by defendant's negligence and a contrary inference, then the resolution of these conflicting inferences is peculiarly appropriate for the jury (*Dunham* v. *Village of Canisteo, supra,* pp. 504–506; *Carlock* v. *Westchester Lighting Co.,* 268 N. Y. 345, 349; *Stubbs* v. *City of Rochester,* 226 N. Y. 516, 525–527).

A complaint may be dismissed without a plenary trial only if " ' by no rational process ' could the jury " make a finding in plaintiff's favor (*Stein* v. *Palisi,* 308 N. Y. 293, 296); or if the injury is " one which might naturally occur from causes other than a defendant's negligence " (*Cole* v. *Swagler,* 308 N. Y. 325, 331). Here, by the exercise of its ordinary rational processes a jury could make a finding in plaintiff's favor that in view of all the known circumstances, it was incumbent upon the city to furnish adequate police protection to the intestate and that it failed in this duty. Bearing in mind the intestate's relative obscurity and station in life (which appear from the complaint), the fair inference is that his death by violence was not one " which might naturally occur from causes other than " (*supra,* p. 331) the city's negligence in furnishing police protection (cf. *Stubbs* v. *City of Rochester,* 226 N. Y. 516, *supra,* and *Dunham* v. *Village of Canisteo,* 303 N. Y. 498, *supra*).

It should be clear that the foregoing statements and discussion are *not* intended to postulate a new rule of law to the effect that an informer, *ipso facto,* becomes entitled to police protection. His status as an informer merely provides the foundation for a claim to police protection. Whether or not in any particular case such protection should be furnished is essentially a factual question — one which must be determined on the basis of: (a) all the circumstances involved, such as the character of the offender, the number and the nature of his offenses, his ability for reprisal against the informer, the vulnerability of the informer to attack, etc.; and (b) the city's actual or constructive knowledge of such circumstances.

There is another independent basis upon which this complaint should, in any event, be sustained. If it be assumed that the city in the first instance was under no legal duty to protect the intestate from violence by unknown assailants, the fact is that it initially undertook and performed such duty; but later, on the ground that the threats against the intestate were feigned or spurious and that the danger was inconsequential, it arbitrarily withdrew from him all its protection and lulled him into the

belief that, without any added protection or precaution, he was safe and secure in freely going through the city streets.

The city having thus voluntarily assumed to exercise a duty of protection toward the intestate, it is responsible for its negligence in the performance of such assumed duty — even if it be ultimately held that, as matter of law, no such duty existed originally (cf. *Marks* v. *Nambil Realty Co.,* 245 N. Y. 256, and *Frazer* v. *Bader,* 263 App. Div. 838).

Accordingly, the order granting the city's motion to dismiss the complaint and the judgment entered thereon should be reversed, and the motion should be denied.

NOLAN, P. J., WENZEL, MACCRATE and UGHETTA, JJ., concur; BELDOCK, J., dissents and votes to reverse the order and judgment and to deny the motion, with opinion.

Order granting motion to dismiss the complaint for insufficiency, and judgment entered thereon, affirmed, without costs.