## (July 14, 1959)

■ LILLIAN C. BERNARD, as Administratrix of the Estate of MATTHEW BERNARD, Deceased, Respondent, v. VILLAGE OF ANDOVER, Appellant.

APPEAL from a judgment of the Supreme Court in favor of plaintiff entered November 26, 1958, in Allegany County, upon a verdict rendered at a Trial Term. Appeal from an order of said court which denied a motion by defendant for an order setting aside the verdict and for a new trial.

Judgment and order reversed on the law and facts, without costs of this appeal to either party, and complaint dismissed, without costs. Memorandum: Upon the facts presented in this record there was no duty imposed upon the police officers to take plaintiff's intestate to the hospital or to take action other than they did. "Without duty, there can be no breach of duty, and without breach of duty there can be no liability." (*Williams* v. *State of New York*, 308 N. Y. 548, 557.)

HALPERN, J. (dissenting). In my opinion, the evidence established the existence of a duty on the part of the police officers employed by the defendant village and a breach of the duty by them, for which the village was properly held liable. I believe that the weight of the evidence supports the jury's verdict but, since the majority of the court has decided to reverse the judgment on the facts, and since this court's decision on that aspect of the case is final, no useful purpose would be served by discussing the weight of the evidence. But the majority of the court has gone further and has voted to reverse the judgment on the law as well as on the facts and to dismiss the complaint. I shall address myself in this dissenting opinion only to the question of whether the dismissal of the complaint is proper. In deciding that question, we must, of course, be " guided by the rule that the facts adduced at the trial are to be

considered in the aspect most favorable to plaintiffs and that plaintiffs are entitled to the benefit of every favorable inference which can reasonably be drawn from those facts ". " The Appellate Division is without power to dismiss a complaint * * * when plaintiff has made out a prima facie case " (*Sagorsky* v. *Malyon*, 307 N. Y. 584, 586). Of course, if the evidence presents questions of fact, upon the determination of which the liability of the defendant depends, the complaint may not properly be dismissed.

Examining the evidence in this case in the light of these rules, it seems clear to me that the dismissal is unwarranted. The facts in this case may be fairly stated as follows:

At about 11:00 P.M., on Friday, June 21, 1957, the decedent engaged in a fight or scuffle with another patron at a hotel bar in the Village of Andover, in the course of which the decedent was struck or kicked in the abdomen. The two men were separated and the decedent was escorted out of the barroom. There was a concrete porch outside the hotel about eight inches above the level of the sidewalk. In stepping down from the porch to the sidewalk, the decedent fell to the sidewalk and remained there in a crouched or sitting position. There was some testimony that the decedent appeared to be intoxicated, but there was testimony to the contrary by the proprietor of the hotel, which the jury had the right to believe. The proprietor testified that, so far as he knew, the decedent had had two bottles of beer and that in his opinion the decedent was not intoxicated.

The village police force consisted of two officers, one of whom served as the Chief of Police. The two officers came along shortly after 11 o'clock and found the decedent on the sidewalk. The decedent asked the police officers to take him to the hospital. The police officers did not comply with this request but, on the contrary, threatened to arrest the decedent and to take him to the county jail in Belmont, eight miles away, unless he got off the street at once. Two bystanders asked that they be permitted to take the decedent home and the police officers agreed to this in lieu of making an arrest. The police officers told the bystanders: " Go ahead and take him home. Just get him off the street ". But they repeated that if this was not done, they would arrest the decedent.

On the way home, the decedent told the bystanders that he was sick and repeatedly asked them to take him to the hospital but they paid no attention to his request. Upon arrival at the decedent's home, the bystanders found that the first floor was barren of furniture and they laid the decedent on the floor. It subsequently appeared that the decedent had recently come to Andover to work and that his wife and children were still living in a neighboring town. The decedent was temporarily living in the house in Andover without any furniture except a cot on the second floor, pending the moving of his family and the family furniture into the house.

About an hour after the decedent had been brought home, shortly before midnight, neighbors living across the street heard noises coming from the decedent's house. One of them testified that the noises sounded like the groans of a " wounded jungle animal ". Another testified that they sounded like the cry of a man in pain. The neighbors called the police and the two police officers arrived in a few minutes and found the decedent on the bare floor of the house in darkness, all alone, groaning in pain. The police officers told him that the neighbors had complained of the noise and that he would have to be quiet. The officers made no attempt to get medical assistance and they left. The groans continued in a subdued tone for about 10 minutes and then ceased.

The following morning, at about 8:00 A.M., the decedent's niece came to the house and found the decedent there. There was evidence that he had been bleeding during the night. The niece observed that the decedent was shaking and that blood was running down his neck from his ear. She made several attempts to get medical aid. The doctor arrived about 3:15 in the afternoon. This was about 16 hours after decedent had asked the police officers to take him to a hospital and about 15 hours after they had left him groaning on the floor of the bare house. An ambulance called by the doctor arrived shortly after 11:00 P.M. on Saturday, June 22. After a period of observation at the hospital, the doctors decided to perform an exploratory operation. This was done on Tuesday, June 25, and it was found that decedent had suffered a tear in the bladder about 3½ centimeters long and that urine had spread throughout his abdomen. The surgeon repaired the break in the bladder but the decedent died the next day of peritonitis resulting from the ruptured bladder.

It is apparent that the blow which the decedent had suffered in the course of the fight in the bar had caused a rupture of the bladder. There was testimony by the expert pathologist who performed the autopsy that the delay in obtaining medical assistance was a contributing factor in the causing of the decedent's death. The doctor testified that, upon the making of a diagnosis of a ruptured bladder, an operation should be performed to repair the rupture as soon as possible. It could reasonably be inferred that, if the decedent had been hospitalized promptly, while he was suffering from the initial acute pain of the rupture, there would have been an earlier diagnosis of the rupture and a correspondingly earlier operation, with an increased chance of survival. The delay in obtaining medical attention also resulted in an additional period of conscious pain and suffering which medical aid would have avoided or relieved.

The present action was brought by the widow of the decedent, as the administratrix of his estate, against the village for the alleged negligence of its policemen. After the close of the plaintiff's case, the defendant rested without calling the policemen as witnesses or offering any other proof. This authorized the drawing of "the strongest inferences" against the village "which the opposing evidence in the record" permitted (*Noce* v. *Kaufman*, 2 N Y 2d 347, 353; *Laffin* v. *Ryan*, 4 A D 2d 21). The court sent the case to the jury and the jury returned a verdict in favor of the plaintiff in the amount of $10,000.

The conduct of the police officers, as outlined above, gave rise to a duty of care on their part. We may assume, for the purpose of this case, that the police officers could have walked by the hotel and allowed the decedent to remain upon the public sidewalk with impunity. (We put aside the views expressed by leading jurists and other legal scholars which would support the imposition of liability even in that case [Cardozo, Paradoxes of Legal Science, pp. 25-26; Ames, Law and Morals, 22 Harv. L. Rev. 97, 112; Cahn, The Moral Decision, pp. 190-191; 2 Harper and James, Torts, § 18.6, p. 1049; Note, Failure to Rescue, 52 Col. L. Rev. 631, 635, 641-647; cf. Bohlen, The Moral Duty to Aid Others as a Basis of Tort Liability, 56 U. Pa. L. Rev. and Am. L. Reg., 217, 316 (Vol. 56 Old Series and Vol. 47 New Series); Prosser, Torts (2d ed.), § 38, pp. 184-185; Restatement of Torts, Second, Tentative Draft No. 4 (1959), § 314A].) But the police were not content to leave the situation as they had found it. They took charge of the situation and threatened to arrest the decedent unless he got off the street. The act of the decedent in allowing the bystanders to take him home was an act coerced by the police officers' threat. Having elected to interfere in the situation, the police officers were bound to exercise reasonable care in dealing

with it. "The care required * * * included the procurement of medical assistance, if the village officials knew or should have known that the deceased was hurt or injured and in need of a doctor" (*Dunham* v. *Village of Canisteo,* 303 N. Y. 498, 503). In the instant case, a jury could properly find that, in the exercise of care, the officers should have realized that the decedent was sick and that his request that he be taken to a hospital was one which ought to be heeded. The jury could then find that it was negligent for the policemen to direct, under a threat of arrest, that the decedent be taken home instead of to a hospital.

The duty of police officers to obtain medical attention for one apparently in need of it has been recognized chiefly in cases in which the police officers took the injured person into their custody but the taking of custody is not essential to the existence of the duty. The duty may arise equally in a case in which there was active interference without taking of custody. In this case, by their threats and directions, the police officers caused the decedent to be removed from a public place where he might well have received assistance at the hands of more generous passersby. In that way, they made his position appreciably worse. Having undertaken to act at all, the police officers were under a duty to act carefully and to take cognizance of the facts of which they knew or, in the exercise of reasonable care, should have known, with respect to the decedent's need for medical attention. "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all" (*Glanzer* v. *Shepard,* 233 N. Y. 236, 239; see, also, *Dunham* v. *Village of Canisteo,* 303 N. Y. 498 *supra*; *O'Grady* v. *City of Fulton,* 4 A D 2d 743, affd. 4 N Y 2d 717; *Schuster* v. *City of New York,* 5 N Y 2d 75, 87; *Middleton* v. *Whitridge,* 213 N. Y. 499; *Zelenko* v. *Gimbel Bros.,* 158 Misc. 904, affd. 247 App. Div. 867; *Clark* v. *State of New York,* 195 Misc. 581, affd. 276 App. Div. 10, affd. 302 N. Y. 795; Harper, Torts, § 81; Restatement of Torts, §§ 323, 324).

Dean Prosser has stated the governing principle with his usual clarity: "[F]urther, if the defendant attempts to aid him [a man who is ill or intoxicated], *and takes control of the situation,* he is regarded as entering voluntarily into a relation of responsibility * * * Such a defendant will then be liable for a failure to use reasonable care for the protection of the plaintiff's interests" (emphasis added) (Prosser, Torts [2d ed.], p. 186).

It therefore appears that, even if the connection of the police officers with the decedent's fate had ended when the decedent was removed from the public street at their direction, there would have been an adequate basis for holding the village liable for their negligence.

But the matter did not end there. The policemen were called to decedent's home by the neighbors about an hour after the decedent had been taken home. They found the decedent lying on the bare floor in a dark house, groaning in pain, with no one to look after him. There was evidence that the decedent had been bleeding at the time he had been brought home and laid on the floor. It may therefore be inferred that when the police officers arrived, there was blood on the decedent's person or on the floor. Even if the officers had not previously realized that the decedent was ill and in need of immediate medical care, they must have realized it then. Furthermore, even if they had previously thought that sending the decedent home was a reasonable disposition of the matter, despite the decedent's request that he be sent to the hospital, they must have realized that their action had been an unfortunate one, when they learned the special situation which existed in the decedent's home. The police officers should then have realized that their action had resulted in a serious worsening

of the decedent's situation. It thereupon became their duty to take appropriate action to rectify the situation, even though they may have been unaware at the time of their original action that it was likely to cause harm to the decedent. From this point of view, the case falls squarely within section 321 of the Restatement of Torts:

"DUTY TO ACT WHEN PRIOR CONDUCT IS FOUND TO BE DANGEROUS. If the actor does an act, which at the time he has no reason to believe will involve an unreasonable risk of causing bodily harm to another, but which, because of a change of circumstances or fuller knowledge acquired by the actor, he subsequently realizes or should realize as involving such a risk, the actor is under a duty to use reasonable care to prevent the risk from taking effect".

(See, also, for a similar rule in an analogous situation, Restatement of Torts, Second, Tentative Draft No. 4 [1959], § 322.)

The police officers nevertheless did nothing to aid the decedent. On the contrary, they further aggravated his situation by ordering him to be quiet and not to disturb the neighbors, thus cutting off the possibility of a neighbor's coming to his aid in response to an outcry (cf. Restatement, Torts, §§ 326, 327).

Both upon the basis of their conduct when they first encountered the decedent sitting upon the sidewalk and upon the basis of their subsequent conduct when they found the decedent lying on the floor of his home, the police officers were chargeable with negligence.

This case does not involve any question of governmental immunity from liability for failure to provide adequate police protection. The charge of negligence against the defendant in this case is not that it failed to provide a sufficient number of policemen or even that a policeman who encountered a citizen in need of help failed to take any action. On the contrary, the case turns on negligence in the affirmative conduct or acts of commission of the police officers. For this, it is the settled law of this State that the municipality is liable (*Murrain* v. *Wilson Line*, 270 App. Div. 372, affd. 296 N. Y. 845; *Bernardine* v. *City of New York*, 294 N. Y. 361).

I dissent from the dismissal of the complaint.

All concur, except Halpern, J., who dissents and votes for affirmance in an opinion. Present — McCurn, P. J., Kimball, Bastow, Goldman and Halpern, JJ.

Judgment and order reversed on the law and the facts, without costs of this appeal to either party and complaint dismissed, without costs.