Meyer, J.
(dissenting). I dissent for the reasons stated in the dissenting opinion of Mr. Justice Joseph A. Suozzi at the Appellate Division, to which in response to the majority’s memorandum I add the following observations.
As to the first cause of action, there is in the record sufficient evidence to take to the jury the issue whether defendant’s failure to follow suction with use of a sharp curette caused or enhanced the possibility of an unsuccessful *810 abortion. That evidence was presented through the testimony of Dr. Burton Krumholz, called as a witness for. defendant, that the purpose of using a sharp curette after a suction curettage was "[t]o be assured that the pregnancy termination is not incomplete”; in defendant’s affirmative response to the question "would you say that proper practice would well justify making sure by doing another step, namely, using a curette?”; in his affirmative responses to the question "Doctor, when you say scrape, is it intended that the sharp end, by a scraping or cutting process, will loosen and break off any of the contents of the wall of the uterus?” and, following exhibition of the sharp curette to the jury, to the question "So that, Doctor, whatever didn’t get evacuated by the suction device you would expect would be loosened and scraped out in the manner that you demonstrated with the curette; is that right?”; and, finally, in the testimony of Dr. Stanley Birnbaum, called as an expert by defendant, that the purpose of scraping is "to feel it so that you can use your suction again if there’s a significant amount”. The majority’s distinction between an incomplete and an unsuccessful abortion does not militate against my conclusion; the jury could have found based on the testimony of Drs. Krumholz and Birnbaum that defendant never used the sharp curette for if he had he would necessarily have discovered his lack of success.
As to the cause of action for emotional and psychic injury, the majority’s position is that defendant’s delay in notifying plaintiff of his failure was not an independent cause of such injury, though it may have exacerbated the damage arising from that failure. So to hold is to ignore the fact that had plaintiff been notified promptly there would, the jury could have found, have been no emotional or psychic injury arising from the failure because it would then have been possible since she was then in her first trimester, to repeat the suction curettage procedure successfully. By delaying notice for six weeks, notwithstanding his admitted knowledge from the pathology report of the absence of villi with all that that portended, defendant confronted plaintiff with the much greater risk, and much more difficult decision in view of her religious principles and cancerous physical condition, of a saline abortion. Of these conditions and principles defendant was fully aware, and his witness, Dr. Krumholz, conceded that fears such as plaintiff’s should have been taken into consideration by defendant, even though not a psychiatrist.
*811 As a wrongdoer, defendant is chargeable with all the suffering his act or failure to act caused, or substantially, contributed to causing, to plaintiff, even though plaintiff’s pre-existing mental and physical condition made her more susceptible to such injuries (Owen v Rochester-Penfíeld Bus Co., 304 NY 457; Dunham v Village of Canisteo, 303 NY 498, 505). Plaintiff’s position is similar to that of the decedent, Dr. Lewis, in Fuller v Preis (35 NY2d 425). The jury found that Dr. Lewis’ suicide was caused by brain damage incurred in an automobile accident. To defendant’s argument that Lewis’ suicide resulted from other causes, this court responded that the issue was for the jury, saying (at p 433): "Dr. Lewis’ wife was paralyzed in the upper part of her body due to poliomyelitis and was suffering nervous exhaustion when he committed suicide. His mother had recently been diagnosed for cancer. It was for the jury to consider whether these dire facts, along with the other evidence, rendered remote or displaced his mental derangement as a substantial cause of the suicide. Put another way, the issue for the jury was whether the defendants’ negligence substantially contributed to Dr. Lewis’ death (Dunham v. Village of Canisteo, 303 N. Y. 498, 505). They did not have to find that it was the only cause * * * In finding that the brain damage was the proximate cause of the suicide, the jury reached a conclusion both legally and medically supportable”. As in that case, defendant here would be entitled to put before the jury testimony intended to exclude plaintiff’s pre-existing condition from the damage she suffered, but he cannot escape liability altogether (see, also, McCahill v New York Transp. Co., 201 NY 221, 224).
There is, moreover, sufficient evidence to take the causation issue on this cause of action to the jury also: in Dr. Krumholz’s agreement that there was a basis for fear of harm to the unborn infant in the unshielded X ray taken of plaintiff, and in Dr. Engel’s testimony of psychoneurosis of which the delay of six weeks in telling plaintiff of the failure of the abortion was a competent producing cause. That plaintiff concluded at that juncture not to have the second abortion does nor foreclose the possibility that had she been told promptly while the suction curettage procedure was still possible, she would have had it and certainly does not make speculative the agonizingly different decision with which defendant’s delay in informing her confronted her.
For the foregoing reasons, I would reverse the Appellate *812 Division order, which reversed on the law, and remit the matter for its consideration on the facts.
Chief Judge Cooke and Judges Jasen, Gabrielli and Jones concur in memorandum; Judge Meyer dissents and votes to reverse in an opinion in which Judges Wachtler and Fuchs-berg concur.
Order affirmed.