Reames v State of New York (2021 NY Slip Op 00712)





Reames v State of New York


2021 NY Slip Op 00712


Decided on February 5, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 5, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., NEMOYER, CURRAN, TROUTMAN, AND DEJOSEPH, JJ.


792 CA 20-00533

[*1]DOROTHY REAMES, AS EXECUTRIX OF THE ESTATE OF H. CARLTON REAMES, DECEASED, CLAIMANT-APPELLANT,
v
STATE OF NEW YORK, NEW YORK STATE THRUWAY AUTHORITY AND NEW YORK STATE CANAL CORPORATION, DEFENDANTS-RESPONDENTS. (CLAIM NO. 120260.) 






MACKENZIE HUGHES LLP, SYRACUSE (W. BRADLEY HUNT OF COUNSEL), AND GREENE REID & POMEROY, PLLC, FOR CLAIMANT-APPELLANT.
LETITIA JAMES, ATTORNEY GENERAL, ALBANY (JONATHAN D. HITSOUS OF COUNSEL), FOR DEFENDANTS-RESPONDENTS. 


 Appeal from an amended judgment of the Court of Claims (Glen T. Bruening, J.), dated August 28, 2019. The amended judgment dismissed the claim. 
It is hereby ORDERED that the amended judgment so appealed from is affirmed without costs.
Memorandum: H. Carlton Reames (decedent) sustained fatal injuries when the vehicle in which he was riding as a passenger crashed into an out-of-commission bridge. As executrix of decedent's estate, claimant commenced this wrongful death action alleging, inter alia, that defendants were negligent in the operation and maintenance of the bridge by creating a dangerous condition on the bridge, i.e., using a steel box beam as a barrier at the entrance to the bridge. On claimant's prior appeal from a judgment dismissing the claim after a nonjury trial, we determined, inter alia, that the Court of Claims erred in dismissing the claim insofar as it alleges that defendants created a dangerous condition that constituted a proximate cause of decedent's injuries (Reames v State of New York, 158 AD3d 1117, 1119 [4th Dept 2018]), and that "defendants' decision to weld a steel box beam across the front of the [b]ridge, at a height that allowed a motor vehicle to proceed under the beam, constituted the creation of a dangerous condition as a matter of law" (id. at 1119). We modified the judgment by reinstating the claim insofar as it alleges that defendants created a dangerous condition that constituted a proximate cause of decedent's injuries, and we remitted the matter to the Court of Claims to determine "whether the steel box beam was a substantial factor in aggravating decedent's injuries and causing his death" (id.).
Upon remittal, the court determined that defendants' negligence in installing the steel box beam was not a substantial factor in aggravating decedent's injuries and causing his death because decedent would have been injured even if defendants had installed a W-beam barricade, which is the type of barrier required by the Department of Transportation's standards for the closure of a bridge. Claimant now appeals from an amended judgment dismissing the claim, and we affirm.
"On appeal from a judgment entered after a nonjury trial, this Court has the power to set aside the trial court's findings if they are contrary to the weight of the evidence and to render the judgment we deem warranted by the facts, although [w]e must give due deference . . . to the court's evaluation of the credibility of the witnesses and quality of the proof . . . and review the record in the light most favorable to sustain the judgment . . . Moreover, [o]n a bench trial, the [*2]decision of the fact-finding court should not be disturbed upon appeal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence" (Ramulic v State of New York, 179 AD3d 1494, 1495 [4th Dept 2020] [internal quotation marks omitted]).
Contrary to claimant's contention, we conclude that a fair interpretation of the evidence supports the court's determination that the steel box beam was not a substantial factor in aggravating decedent's injuries and causing his death. Claimant's witnesses testified with respect to the type of barrier that defendants were required to use to block access to the bridge, i.e., a W-beam. Claimant also presented evidence that decedent's impact with a W-beam would have led to the same result, i.e., a fatality.
We reject claimant's contention that the court's determination violates the directive in Brown v State of New York (31 NY3d 514 [2018]) that accident victims are not required to "identify a specific remedy and prove it would have been timely implemented and prevented the accident" (id. at 520). In our view, Brown does not preclude the court from considering whether decedent was just as likely to have suffered the same injuries in the absence of defendants' negligence. Most importantly, however, it was claimant that framed the issue and presented evidence that defendants needed to comply with the Department of Transportation standards for a permanent bridge closure by installing a W-beam. Although that evidence supports the conclusion that defendants created a dangerous condition by not installing a W-beam, and instead installing a steel box beam, it also permitted the court to determine that decedent would have been injured and killed even if the W-beam barricade had been used. "According considerable deference to the findings of the [court], as is appropriate" (Reames, 158 AD3d at 1118 [internal quotation marks omitted]), we conclude that the court's determination with respect to the proximate cause question that we posed to it on remittal is based on a fair interpretation of the evidence (cf. Matter of Kirisits v State of New York, 107 AD2d 156, 158-159 [4th Dept 1985]).
We note that the concerns raised by our dissenting colleagues are not raised by claimant on appeal. Our review is limited to the issues raised by claimant (see generally Ciesinski v Town of Aurora, 202 AD2d 984, 984 [4th Dept 1994]). Furthermore, we do not use a "but for" standard of causation in resolving claimant's appeal. As we clearly state above, a fair interpretation of the evidence supports the court's determination that the steel box beam was not a substantial factor in aggravating decedent's injuries and causing his death.
In light of the foregoing, claimant's remaining contention is academic.
All concur except NeMoyer and Curran, JJ., who dissent and vote to reverse in accordance with the following memorandum: We respectfully dissent because we disagree with the majority's conclusion that the Court of Claims fully and properly addressed the issues presented to it on remittal. We would therefore reverse the amended judgment, reinstate the claim insofar as it alleges that defendants created a dangerous condition that proximately caused decedent's injuries, and remit the matter to the Court of Claims to address the issues presented to it in our prior remittal. In our prior decision in this case, we directed the court to consider "whether the steel box beam was a substantial factor in aggravating decedent's injuries and causing his death" (Reames v State of New York, 158 AD3d 1117, 1119 [4th Dept 2018]). On that remittal, however, we submit that the court did not adequately address whether defendants' negligence, a matter we previously decided in claimant's favor, was a proximate cause in aggravating decedent's injuries from the accident (see id.; Matter of Kirisits v State of New York, 107 AD2d 156, 158 [4th Dept 1985]).
In concluding that the court properly dismissed the claim, the majority holds that the court could consider whether "decedent was just as likely to have suffered the same injuries in the absence of defendants' negligence" and that the evidence in the record allowed the court to determine that "decedent would have been injured and killed even if the W-beam barricade had been used." There are two material flaws to the majority's analysis.
Initially, we respectfully submit that the majority's analysis errs by adopting an incorrect standard of causation. In concluding that the court could consider whether "decedent was just as likely to have suffered the same injuries in the absence of defendants' negligence," the majority improperly elected to apply a "but for" standard of causation, rather than considering whether the negligence was a proximate cause of injury. In our view, applying a "but for" causation standard [*3]"would relieve from liability a negligent actor if the same harm might have been sustained had the actor not been negligent; yet the law is clear that that fact may be considered in fixing damages but does not relieve from liability" (1A NY PJI3d 2:70 at 435 [2020], citing Dunham v Village of Canisteo, 303 NY 498, 505-506 [1952]). Instead, the inquiry is whether defendants' negligence was a substantial factor in aggravating decedent's injuries and in bringing about his death (see Merino v New York City Tr. Auth., 89 NY2d 824, 825 [1996]; Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980], rearg denied 52 NY2d 784 [1980]; Ricchiazzi v Gray, 5 AD3d 1085, 1086 [4th Dept 2004]).
Here, even if the court concluded that decedent's death would have inevitably ensued from a collision with the W-beam barricade, that conclusion "may be considered in fixing damages but does not relieve [defendants] from liability" for their established negligence (1A NY PJI3d 2:70 at 435 [2020]). Inasmuch as liability is premised on negligence and proximate cause, consideration of any possible effect of using a W-beam barricade is premature until after the court determines liability in claimant's favor and proceeds to ascertain damages for any increased or aggravated injuries and the attendant pain and suffering, if any, attributable to what we previously determined to be defendants' negligence.
In any event, even if we could consider the possible effects of the W-beam barricade during the liability phase, we respectfully submit that the majority's analysis is still flawed. It is undisputed that the evidence in the record established that, unlike the driver of the convertible motor vehicle, decedent was not instantaneously killed when the car collided with the steel box beam erected at the bridge's southern boundary (southern steel box beam). Indeed, decedent remained in the vehicle as it proceeded through a "bridge closed" sign, then passed under the southern steel box beam that killed the driver, along the western guard rail of the bridge, and under the slightly higher steel box beam erected at the bridge's northern boundary (northern steel box beam). The vehicle ultimately came to a rest shortly after it passed under the northern steel box beam. The evidence in the record established that decedent's head trauma occurred when he struck the northern steel box beam. It also established that decedent survived the accident for an additional 18 hours, at which point he succumbed to "[c]ranio-cerebral injuries" caused by the "automobile-fixed object collision."
In other words, the evidence in the record supports the conclusion, left unconsidered by the court, that decedent's injuries were not identical to those he would have suffered had he been instantaneously killed by a collision with the alternative W-beam barricade. Thus, the court erred by failing to consider whether there was an aggravation of decedent's injuries that were proximately caused by defendants' negligence in erecting the steel box beams on both sides of the bridge.
Entered: February 5, 2021
Mark W. Bennett
Clerk of the Court