NEIL STEIN, an Infant, by His Guardian ad Litem, SAMUEL STEIN et al., Appellants, *v.* JOSEPH PALISI et al., Individually and as Copartners Doing Business as PALISI TAXI et al., Respondents.

Argued January 11, 1955; decided March 10, 1955.

*George A. Burrell* and *Arthur N. Seiff* for appellants. I. The evidence fully warrants the jury's finding that defendants' taxicab struck the infant plaintiff. (*Garippa* v. *Wisotsky,* 280 App. Div. 807, 305 N. Y. 571; *Noseworthy* v. *City of New York,* 298 N. Y. 76; *Fagan* v. *Atlantic Coast Line R. R. Co.,* 220 N. Y. 301; *Ingersoll* v. *Liberty Bank of Buffalo,* 278 N. Y. 1; *Garrow* v. *State of New York,* 268 App. Div. 534; *Dillon* v. *Rockaway Beach Hosp. & Dispensary,* 284 N. Y. 176; *Gutierrez* v. *Public Service Interstate Transp. Co.,* 168 F. 2d 678; *Warner* v. *New York, Ontario & Western Ry. Co.,* 209 App. Div. 211.) II. The evidence fully warranted the jury's finding of negligence on the part of defendants. (*Day* v. *Johnson,* 265 App. Div. 383; *Hammer* v. *Bloomingdale Bros.,* 215 App. Div. 308; *Touris* v. *Fairmont Creamery Co.,* 228 App. Div. 569; *Lo Vaglio* v. *Kahn,* 253 App. Div. 824; *Schwartz* v. *Petfield,* 283 App. Div. 845; *Allen* v. *Stokes,* 260 App. Div. 600; *Scantlebury* v. *Lehman,* 305 N. Y. 713; *Klein* v. *Long Is. R. R. Co.,* 303 N. Y. 807; *Trimble* v. *City of New York,* 275 App. Div. 169.)

*Sidney Advocate* and *E. Edan Spencer* for respondents. I. The finding of the jury was contrary to the weight of the evidence. (*Ruppert* v. *Brooklyn Heights R. R. Co.,* 154 N. Y. 90; *People* v. *Kennedy,* 32 N. Y. 141; *Lopez* v. *Campbell,* 163 N. Y. 340; *White* v. *Lehigh Valley R. R. Co.,* 220 N. Y. 131; *Wank* v. *Ambrosino,* 307 N. Y. 321; *Scharff* v. *Jackson,* 216 N. Y. 598; *Digelormo* v. *Weil,* 260 N. Y. 192.) II. The denial of the trial court to grant defendants' motions to dismiss the complaint and direct a verdict in their behalf was error. (*Matter of Case,* 214 N. Y. 199; *Blum* v. *Fresh Grown Preserve Corp.,* 292 N. Y. 241; *McDonald* v. *Metropolitan St. Ry. Co.,* 167 N. Y. 66.)

FROESSEL, J. The Appellate Division has reversed, on the law and the facts, a judgment of Trial Term based on a unanimous jury verdict in favor of plaintiffs, and dismissed plaintiffs' complaint. Thus the question before us is whether plaintiffs have made out a prima facie case. In determining that question we must, of course, consider the evidence in the light most favorable to plaintiffs, and afford to them the benefit of every favorable inference which can reasonably be drawn therefrom (*Sagorsky* v. *Malyon,* 307 N. Y. 584, 586).

In June of 1948, plaintiff Samuel Stein, his wife, and their two children were vacationing in one of a group of small bungalows known as the Dritsas Farm Colony near Beacon, New York. These bungalows were situated in a row along the left-hand side of a private, dead-end access road. Said private road, where it began, joined a public dirt road, which in turn led to New York State Route 9-D, some three-tenths of a mile away. The bungalows were "completely separated from the highway and the main road". The private access road was fifteen feet wide, and was made of rough cinders and stones. Between it and the bungalows were lawns of grass and weeds. Four bungalows were grouped toward the dead end of the private road. The first of these was occupied by the Steins.

On June 21, 1948, at about 6:15 P.M., the Steins' nineteen-month-old baby was playing with his three-year-old sister, his six-year-old cousin and two other children on the lawn in front of the second bungalow. Defendants' Chevrolet taxi came down the private road "pretty fast" raising dirt "in the air", according to a neighbor, and passed the spot where the children were playing. Kaufman, driver of the taxi, admitted that when he drove in, he had seen and passed some children around the first bungalow. Kaufman then, according to plaintiff's mother, made a left turn off the cinder road onto the lawn, drove up "quite a ways" toward the third or fourth bungalow, and stopped, with his cab facing the bungalow.

Immediately after the taxi had begun to drive away, the baby's sister and cousin, who had meanwhile come to the Stein bungalow to inquire about dinner, and who had been promptly sent back by Mrs. Stein to look after the baby, began screaming. Mrs. Dritsas, who was at the time about fifty feet from the Stein bungalow, heard the screaming and then saw defendant's taxi departing along the private road. She testified it was going "very fast", and had not yet made the turn onto the dirt road. Alarmed by the screaming, Mrs. Stein ran outside and found her baby lying unconscious, half on the grass and half on the road, face down.

When Mrs. Stein first reached the baby, his head was "completely bloody", and his clothes were bloody, torn, dirty and black, with "gravel, *oil,* stains" and "*grease*" (emphasis supplied). Summarized, the baby's injuries were a fractured

skull, shock, abrasions and lacerations. There was a triangular laceration of the forehead and frontal areas which penetrated all layers of the scalp and bared the bone of the skull. Dirt had been ground into it. There were other lacerations on the chest, face and legs. Dirt and cinders had also been ground into them. These lacerations were '' abrasive '' and had a '' brush characteristic '' which indicated to the attending physician that '' Either the skin was moving across some surface or some surface moved across the skin in such wise that this material was ground into these lacerations and abrasions.''

The permanent scars left by those lacerations are linear bluish marks, diagnosed by the dermatologist as accidentally induced tattoo marks of a permanent nature caused by the introduction of some matter such as coal dust, *cinders* or stones into the skin; he added that these scars could *not* have been caused by a fall or a blow, but were '' undoubtedly '' due to an abrasive trauma.

In leaving the area, the taxi concededly passed the point where the baby was found bleeding and unconscious. Moreover, there is no evidence of any other person, motor vehicle, or object in the vicinity which during that brief unguarded interval was capable of inflicting upon the baby injuries of the severity and character of those just described. The medical testimony as to those injuries left little doubt as to how they had come about. From all these circumstances a jury could properly find that defendants' taxi had contacted the baby, and either dragged or pushed him through the dirt and cinders.

The only question remaining, therefore, is whether there was sufficient evidence from which the jury could reasonably have inferred negligence. The Appellate Division held that there was no evidence on which to base an inference of negligence, and it dismissed the complaint. We may affirm that dismissal only if we conclude that '' by no rational process '' could the jury have based a finding in favor of plaintiffs on the evidence here presented (*Blum* v. *Fresh Grown Preserve Corp.*, 292 N. Y. 241, 245–246).

The injured plaintiff here, as noted, was a baby nineteen months old. He could walk and was very active. But obviously, at his age, he was totally unable to watch out for his own safety. Indeed, as a matter of law, he could not be guilty of contributory negligence (*Prendegast* v. *New York Central & H. R. R. R. Co.*,

58 N. Y. 652, 653; *Verni* v. *Johnson*, 295 N. Y. 436, 437–438; *Ihl* v. *Forty-Second St. & Grand St. Ferry R. R. Co.*, 47 N. Y. 317, 323; *Mangam* v. *Brooklyn R. R. Co.*, 38 N. Y. 455, 458–461; *McGarry* v. *Loomis*, 63 N. Y. 104, 106). Moreover, since the infant plaintiff was of course unable to testify, the jury had to rely upon circumstantial evidence. This it could properly do (*Garippa* v. *Wisotsky*, 305 N. Y. 571; see, also, *Noseworthy* v. *City of New York*, 298 N. Y. 76).

When Kaufman entered the bungalow area, he drove "pretty fast" on the private fifteen-foot road, and admittedly saw the young children playing on the lawn, which by Kaufman's own testimony was only fifteen to twenty feet wide. Shortly thereafter he left by the same road, going "very fast". There is no direct evidence available to plaintiff as to exactly what happened in the brief interval between the time Kaufman stopped to discharge his passengers and when he was seen driving out "very fast", except Kaufman's testimony that he turned his Chevrolet cab around. The jury could have inferred that this could not readily be done on a road fifteen feet wide without driving onto the lawn. It was also proper for the jury to determine that as a reasonably prudent person, he should have driven with greater caution than would have been required had no one, or only adults, been in the vicinity (see *Hammer* v. *Bloomingdale Bros.*, 215 App. Div. 308; *Day* v. *Johnson*, 265 App. Div. 383, 387; *Schwartz* v. *Petfield*, 283 App. Div. 845).

On the issue of defendant's negligence, it makes no difference whether the jury chose to believe Mrs. Stein's testimony that the taxi stopped on the lawn when its passengers alighted, or whether it accepted Kaufman's statement that he stopped on the road. If, as he drove out, the baby was in or close to the road, on the edge of which his mother found him, lying face down, Kaufman obviously was under a duty to watch out for him, to avoid hitting him, and not to travel "fast" — particularly so since he knew that young children were nearby. Even greater was his duty of careful observation and operation of his taxi, if he in fact drove off the road and onto the lawn, as the jury was entitled to find. In either event, and no matter where the actual impact occurred, a jury could find under all the circumstances that when Kaufman failed to see the baby, he did not exercise

caution commensurate with the danger presented, and was therefore negligent. In other words, from the facts and circumstances in this case, the jury had the right to infer that the only way the child could have received its injuries was through contact with the taxicab, and from those same facts and circumstances it had the right to infer that defendant was negligent.

The evidence giving rise to an inference of negligence here is fully as strong as, if not stronger than, that presented to us in the cases of *Scantlebury* v. *Lehman* (280 App. Div. 978, affd. 305 N. Y. 713) and *Klein* v. *Long Is. R. R. Co.* (278 App. Div. 980, affd. 303 N. Y. 807), in both of which we approved inferences of negligence and causation. In each of those two cases, as well as in this one, the evidence sufficiently established contact between a vehicle [or train] and a pedestrian, and the injured person was found lying near the path which the vehicle [or train] was known to have taken. There was no direct evidence in any of the cases as to how the accident actually happened, for each of the defendant's operators testified he had not seen the victim immediately prior to the accident.

The instant case, if anything, is stronger than the *Scantlebury* case (*supra*), because, unlike the bus on busy 125th Street in New York City, defendants' taxi was the only vehicle on this private dead-end road when the accident happened, and because here it happened in daylight and there at night. This case is stronger than either the *Scantlebury* or *Klein* case (*supra*) because the injured plaintiff here was not an adult, but a mere baby, incapable of contributory negligence.

Finally, the recent case of *Wank* v. *Ambrosino* (307 N. Y. 321), cited by defendant, is not controlling here. There, defendant felt a bump while he was traveling at *slow* speed on a *public* street in New York City when *night* had fallen. He then stopped, looked at his tires, and, discovering nothing, started again. Hearing more noise, he stopped again and found plaintiff's intestate, an *adult* whom he had not seen before, under his car. Upon that record the majority of our court held that an inference of negligent causation could not be permitted. The circumstances of the instant case, as already noted, are entirely different.

Defendant devotes much space to a discussion of the weight of the evidence. However, the question before us concerns not the

weight, but the sufficiency of the evidence to establish a prima facie case. Upon all the evidence presented, we are of the opinion that plaintiff did make out a prima facie case within the principles established by our decisions.

The judgments should be reversed, and a new trial granted, with costs to abide the event.

CONWAY, Ch. J., DESMOND, DYE, FULD, VAN VOORHIS and BURKE, JJ., concur.

Judgments reversed, etc.