Herbert **BUTLER**, James **Wilmoll**, Richard **Martelli**, Bruce **Roys**, William **Shiland**, Harold **Frederickson**, Bruno **Kapner**, Howard J. **Greenslet**, Anson W. **Kipp** and Alvah **Webster**, Plaintiffs,

v.

**GENERAL MOTORS CORPORATION,** **Defendant.**

**Civ. A. Nos. 3917, 3918, 3896, 3809.**

United States District Court N. D. New York.

July 6, 1956.

Harold J. Hughes, Albany, N. Y., for plaintiffs Herbert Butler, James Wilmoll, Richard Martelli, Bruce Roys, William Shiland, Harold Frederickson and Bruno Kapner.

John H. Spain, Troy, N. Y., for plaintiffs Anson W. Kipp and Alvah Webster.

Murphy, Aldrich, Guy, Broderick & Simon, Troy, N. Y., for plaintiff Howard J. Greenslet. Morris Simon, Troy, N. Y., of counsel.

Carter & Conboy, Albany, N. Y., for defendant M. J. Conboy, John W. Cebula, Albany, N. Y., of counsel.

FOLEY, District Judge.

These actions involving ten individual plaintiffs against the single corporate defendant were tried together before the court and jury. Verdicts totalling $350,-000 were returned in favor of the plain-

---

tiffs, ranging from $2,500 for four of the plaintiffs to the sum of $200,000 for the plaintiff Greenslet. Motions made by the defendant corporation for dismissal and directed verdicts were reserved upon at the end of the evidence, and upon the return of the verdicts similar motions were renewed with the alternative motion for a new trial, particularly upon the motions and objections made during the trial and the excessiveness of four of the verdicts. In this last respect, the defendant challenges only as grossly excessive the verdict of $200,000 for Greenslet, the $50,000 verdict for Webster, and the $30,000 verdicts for Frederickson and Kipp.

The actions were based upon the famed doctrine of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, and each action had the common thread of responsibility and liability based upon the principles of that authority. Much has been written on the MacPherson doctrine and I have no intention to paint the lily further in this practical situation of disposition of legal motions in reference to a jury trial and jury verdicts. An interesting and most comprehensive article on the subject by Robert Martin Davis with a review of all the New York authorities has been reprinted from the Fordham Law Review, Summer 1955, and it refers to a standard treatise on the subject by Professor Bohlen, 45 L.Q.Rev. 343, 361 (1929). The doctrine has recently met with the approval of the Court of Appeals, Second Circuit. Fredericks v. American Export Lines, 2 Cir., 227 F.2d 450; Dimas v. Lehigh Val. Railroad Co., 2 Cir., 234 F. 2d 151. The most recent decision in New York by the Court of Appeals which emphasizes and clarifies the approach to be taken and the test to be used as to the sufficiency of evidence in situations of this kind is Swensson v. New York, Albany Despatch Co., Inc., 1956, 309 N.Y. 497, 131 N.E.2d 902.

■ From the viewpoint of these authorities, and particularly the writing in the Swensson case, and from the established position that the evidence must be viewed in the most favorable light for the plaintiffs, I deny the motions for directed verdicts in each of the actions.

[2] The trial became as usual, to a great extent, "a battle of the experts". It is the same close question as always present because there is no pinpointing by the plaintiffs as to negligence by the defendant corporation in the manufacture and assembly of the stud or bolt, nut and washer which they claimed to be defective and the cause of the unfortunate accident. We do have for the plaintiffs the testimony of Douttiel, an automobile man in various capacities for years, who testified that this particular part of the steering assembly was loose, the stud was bent, and the thread of the stud or bolt and nut were damaged and burnished in certain areas after the accident. Nash, the professor in metallurgy, gave differences in hardness from the standards of the defendant company. It must be kept in mind that the experts for the defendant corporation admitted the damage to certain portions of the parts, but the main contention as stated by Harris apparently was that such damage to the bolt and thread was caused by the force of the accident. This conflict, in my judgment, seems peculiarly for a jury and may allow the inference of lack of ordinary care.

It would be difficult for me in my review of the evidence to conclude that "by no rational process" could the jury have based a finding in favor of the plaintiffs on the evidence here. Swensson v. New York, Albany Despatch Co., Inc., supra, 309 N.Y. at page 505, 131 N.E.2d 902; citing Blum v. Fresh Grown Preserve Corp., 292 N.Y. 241, 245–246, 54 N.E.2d 809; Stein v. Palisi Taxi, 308 N.Y. 293, 296, 125 N.E.2d 575.

Circumstantial evidence from which reasonable inferences may be drawn is sufficient, except here we have also the positive testimony of Hanson, the driver of the truck, as to the erratic behavior of the steering wheel and front wheels just prior to the accident which he said made the truck uncontrollable.

As Mr. Justice Black recently wrote in Schulz v. Pennsylvania R. Co., 350 U.S. 523, 76 S.Ct. 608, 610, (although a Jones

Act case, the discussion contains much of the legal standards upon which the jury was instructed in these actions):

"In considering the scope of the issues entrusted to juries in cases like this, it must be borne in mind that negligence cannot be established by direct, precise evidence such as can be used to show that a piece of ground is or is not an acre. Surveyors can measure an acre. But measuring negligence is different. The definitions of negligence are not definitions at all, strictly speaking. Usually one discussing the subject will say that negligence consists of doing that which a person of reasonable prudence would not have done, or of failing to do that which a person of reasonable prudence would have done under like circumstances. Issues of negligence, therefore, call for the exercise of common sense and sound judgment under the circumstances of particular cases. \* \*"

The great effort that the defendant put forth in the trial to convince the jury that the accident was caused by the careless operation of the truck is evidenced throughout the record. I emphasized this feature of that defense in my charge because it was substantial in nature and presentation, but the jury verdicts as returned seem decisive on that issue.

As to the objections in the record upon which the defendant bases its motion for a new trial, I am not cognizant that they are substantial or that their decision in any manner impaired or prejudiced the rights of the defendant corporation. The question as to the interrogatories seemed to be one of the usual tussles in a lawsuit that frequently appear and are occasioned by the trial strategy of the attorneys. The reading of certain answers to interrogatories was not pressed too vigorously. It was my impression at the trial—and the reading of the record corroborates such feeling—that the presence of the witness O'Kroy would answer the entire problem. As to the questions about compensation proceedings, the questions did not seem to relate nor were

they pressed to show substantial contradictions, and throughout the trial I was alert to avoid such questions which obviously would prejudice the plaintiffs unless for that specific purpose. See Plough v. Baltimore & Ohio R. Co., 2 Cir., 164 F. 2d 254, certiorari denied 333 U.S. 861, 68 S.Ct. 740, 92 L.Ed. 1140. The questions to the experts are always troublesome, but I feel they were kept within the proper range for both sides. After discussion in Chambers, Exhibits 6A, B, C and D were stricken from the evidence and as agreed upon the record, the attorneys did not refer to them in their summations.

■ I am frank to say that my chief problem in reference to these motions is the claimed excessiveness of the Greenslet verdict. The record shows (pages 828–829) that on the argument of the renewed motions after the verdict my mind questioned the $200,000 amount. After much reflection and soul-searching, this impression that such amount is too high remains with me. The difficulty is accentuated by the fact that in my judgment all the other verdicts are properly within range and adequately supported by the evidence. This opinion finds support in the fact that there was no testimony offered by the defendants to contradict the medical and personal testimony of each plaintiff as to the extent of his personal injuries, accompanying pain, suffering and disability.

I have looked for some grounds upon which to formulate a fair judgment and there are few of quality because it is impossible to stereotype injuries, mental and physical, and their consequences, of any human. Each individual must be treated as an individual with the utmost regard for the jury's determination and function, for which I have the highest respect and seldom intrude upon.

In a recent case, Cereste v. New York, New Haven & Hartford R. R. Co., 2 Cir., 231 F.2d 50, the Court of Appeals of the Second Circuit affirmed without discussion a verdict for $125,000 for amputation of one leg about the knee. In Affolder v. New York, Chicago & St. Louis R. Co., 1950, 339 U.S. 96, 101, 70 S.Ct.

509, 94 L.Ed. 683, the Supreme Court of the United States decided that the sum of $80,000, which had been reduced from $95,000, was not monstrous for the loss of a leg.

I do not intend to rationalize or become adjectival about the excessiveness except to state that under the circumstances and my review of the doctors' testimony and that of Greenslet it is my considered judgment it is too high. I find the most comfort for my determination in the opinion of Judge Bergan, an outstanding State Judge, in Mann v. Hunt, 283 App. Div. 140, 126 N.Y.S.2d 823, 824, as to the troublesome situation where a Judge in effect reduces a verdict and takes money from a plaintiff that was awarded by a jury:

> "The point of interference is not fixed on the caprice of judicial individualism; it is rather arrived at by a synthesis of all the experience that the judge has had: in the beginning as a law student, in the later controversies of law practice, in the hearing of cases and the writing of decisions, in the sum of all that he has absorbed in the courtroom and in the library."

By this application of principle, which is fundamentally experience and instinct, I shall grant the motion of the defendant for a new trial in this instance, unless the plaintiff Greenslet by stipulation agrees to a remission of $40,000 of the verdict of $200,000 returned in his favor. Despite the inflationary trend of the day, I still have the sense that $160,000 is a lot of money, but feel it is justified by the extreme period of hospitalization undergone by Greenslet previous to the amputation, the operation to the cartilage of his knee, the mental and physical discomfort he endured and still endures, the disfigurement and mutilation he must live with, Erie Railroad Co. v. Collins, 253 U. S. 77, 85–86, 40 S.Ct. 450, 64 L.Ed. 790, the prospective loss of future earnings and the other injuries and fractures to his head and body, several of which he complained of at the time of the trial several years after he sustained them.

To summarize, the motions for directed verdicts at the close of the case and renewed after the verdict, are denied as to each plaintiff. The motion for a new trial as to all plaintiffs, except Greenslet, is denied, and judgment is directed to enter in their favor in accordance with the respective verdicts returned.

The motion for a new trial as to the plaintiff Greenslet is denied upon the express condition that a stipulation of remittitur be filed in his behalf within twenty days from the date hereof, remitting the amount of $40,000, the verdict then to be $160,000, for which amount judgment shall enter, and if such is not stipulated and filed within the time specified, the motion for a new trial as to Greenslet is granted. See Comiskey v. Pennsylvania R. Co., 2 Cir., 228 F.2d 687.

It is so ordered.