"Fboessel, J. (dissenting).
In this personal injury action, the Appellate Division, by a divided court, reversed on the law and the facts a judgment entered on a unanimous jury verdict in favor of plaintiff, and dismissed the latter’s complaint upon the ground that there was “ no basis for predicating a finding of actionable negligence on the part of defendants ”, and in any event plaintiff was contributorily negligent “as a matter of law ’ ’. Thus the question before us is whether plaintiff has made oút a prima facie case, and in determining that question we must consider the evidence in the light most favorable to plaintiff, and afford him the benefit of every favorable inference which can reasonably be drawn therefrom (Stein v. Palisi, 308 N. Y. 293, 294; Sagorsky v. Malyon, 307 N. Y. 584, 586).
Sometime before December 20, 1955 defendants, subcontractors of the New York City Transit- Authority (herein called “.Authority ”), had completed construction of a “circuit breaker house ” near the Howard Beach (Long Island) station, and a trench had been excavated beneath the “ subway ” right of way for the purpose of laying certain ducts. The right of way ran north-south, and the excavation ran at right angles across and under the entire track area. According to plaintiff, a construction inspector of the Authority, and his senior inspector, *21 Harry Lough, who was with plaintiff at the time of the accident on December 20,1955, the trench involved was 3 to 4 feet wide and 3 to 4 feet deep — closer to 4 feet; this depth, plaintiff testified, was “ a standard authority for trenches ”. Murray Warshaw, general superintendent for all three defendants, and Fred Pane, their assistant superintendent, testified that it was from 2 to 3 feet wide and deep; this was virtually the only disputed issue of fact as to liability, but we must assume that the jury rejected defendants’ evidence in this regard, as they had the right to do.
In the area of the circuit breaker house, only northbound express and local tracks had been laid. Defendants had removed the ties under said tracks to enable them ‘ ‘ to continue the excavation ’ ’. Track materials were stored to the east of the northbound tracks. On the west was a fenced in storage yard, as well as another excavation running parallel with the tracks. Thus, as plaintiff testified, in order to cross the area from north to south, it was necessary to cross the trench in question, or, as Lough stated, walk on one of the bare rails. The only other alternative was to go “ around through the town ”. Defendants’ witnesses did not contradict this testimony.
Plaintiff further testified that until about a week or two before the accident, “ two planks cleated together” extended across the opening; that 2 or 3 days before, he crossed the trench at a time when the planks had been removed, and that prior to December 20 he complained to Murray Warshaw about their removal. The latter testified that he was on the job almost every day, and that inspectors were constantly present on the job, but he did not deny receiving plaintiff’s complaint. Warshaw had no recollection about the planks, but Fred Pane, defendants’ other witness, stated there were ‘ ‘ planks put down provided for people to walk over, but if they were removed at that particular day, I don’t recollect ”. Pane then reiterated that the planks were “ provisions for people to go across ”.
At 9:30 a.m. on December 20, plaintiff was ordered by his project engineer to inspect the northbound tracks and the line of the future southbound tracks in the Howard Beach station area. When he and his partner, Lough, reached the trench, Lough stepped across the opening; some dirt was piled on the southerly end of the trench about one foot from the excavation ; and as plaintiff attempted to step over behind Lough, the
*22 shoulder between said pile of dirt and the edge of the trench crumbled and gave way, precipitating plaintiff into the trench, and causing his leg to be broken. Lough testified that “ The only means of getting across it [the trench] was to take a good sized jump or a hop * * *; you wouldn’t have to take a running jump,- it wasn’t that wide * * * that an ‘ ‘ exaggerated, more than the normal step ’ ’ was required.
The contract between defendants and the Authority, referred to in the complaint and answer, was introduced in evidence by plaintiff without objection. Article XXI provides, in part, that “ Contractor [includes subcontractor (art. VII)] shall at all times give to the Authority and its members, * * * and to any person designated by the Authority all facilities, whether necessary or convenient, for inspecting the materials to be furnished and the work to be done under this contract ’ ’. (Emphasis supplied.) Under subdivision (a) of article XLVII, the contractor is “ solely responsible ” for all injuries to persons, including “employees of the City or the Authority ”, occurring in connection with the work.
As to excavations, the contract specifications provide, in part:
“ Width and Depth, (a) Special care must be taken to avoid damage wherever excavation is being done * * * ” (§115).
“ Sheeting and Bracing. The sides of the excavation shall be maintained and secured by suitable sheet piling or sheeting, held in place by braces, shores or waling timbers * * * ” (§117).
The excavation into which plaintiff was precipitated, the shoulder of which he testified crumbled under his weight, was not secured by anything, nor was it in anywise planked over. Mr. Warshaw testified that the “ trench was at a depth [in the neighborhood of 24 inches, which estimate the jury must have rejected] where it was unnecessary to sheet or brace ”; that in his opinion if the trench ‘ ‘ was four feet or more in depth and more than four feet in width ”, it should have been reinforced.
The usual motions to dismiss made by the defendants were denied. No exception was taken to the court’s charge in chief, which covered the principles of common-law negligence and contributory negligence. At the request of plaintiff’s counsel, the court properly instructed the jury that they could “ refer to the contract because it is in evidence ’ ’; that if defendants *23 did not perform their contract properly, and this failure was the proximate cause of the accident, i.e., if there was “ a slipping away of the top ’ ’ of the trench, and something should have been done to prevent such slipping (such as bridging or planking or shoring), and it was not done, defendants could be found negligent. Defendants did not except to these additional instructions.
In my opinion, the Appellate Division erred in dismissing plaintiff’s complaint. In holding that plaintiff was guilty of contributory negligence as a matter of law, the majority below relied on brief general statements in Townes v. Park Motor Sales (7 A D 2d 109, affd. 7 N Y 2d 767) and Shields v. Van Kelton Amusement Corp. (228 N. Y. 396). However, the facts in those cases are so totally different from those of the case at bar as to render the cases relied on entirely inapt.
In the present case, it is undisputed that plaintiff was on the right of way as a matter of duty and right; that to carry on his job of inspecting tracks he had to cross the area in which the trench was located; that to cross that area he had either to step across the trench or walk on a bare rail, and that he had the right to rely on defendants’ obligation to furnish him “ all facilities, whether necessary or convenient, for inspecting ” the contract work. Thus the jury had the right to find that he was not contributorily negligent when the shoulder of the trench — which had held him two or three days before and his Senior Track Inspector Lough but a moment before — crumbled as plaintiff attempted to cross, and precipitated him into the unplanked, unsupported excavation.
Unlike the plaintiff in Townes, whose own active negligence brought about the occurrence, plaintiff here chose the definitely safer of the available courses. He did not select the one path ‘ ‘ that exposed him to the danger, when the others did not ’’ (7 A D 2d, at p. 114). Unlike the plaintiff in Shields, he was not engaged in recreation; he could not go home and return another day when the danger did not exist; he was protected by defendants’ specific contractual obligation. Unlike the claimant in Monacelli v. State of New York (295 N. Y. 332), presently cited by defendants, plaintiff here did not actively help to create the condition which caused the injury. And unlike the plaintiff, who applied an acetylene torch to a sealed drum, in Utica Mut. *24 Ins. Co. v. Amsterdam Color Works (284 App. Div. 376, affd. 308 N. Y. 816), cited by the majority, plaintiff here did not fail to exercise standard precautions known to him in face of a known danger. How could he know the shoulder would crumble especially when he had just seen his partner cross safely? If, indeed, as the majority suggested, “ a cautious alternative ” —which would require jumping down into the trench and crawling out on the other side — was available to plaintiff, a risky operation in itself, at most this presented a question for the jury.
Just as clearly, the question of defendants’ negligence was a jury question. The jury having determined that the trench was 3 to 4 feet wide and deep, as they must have done, they could reasonably find in favor of plaintiff upon this record. This is so because it was not disputed that defendants dug the trench; they had the contractual duty to this plaintiff to afford “ all facilities, whether necessary or convenient ”, for his inspection ; Mr. Warshaw admitted knowledge that inspectors were constantly on the right of way; plaintiff, in the course of his duties, had to cross the trench; that “two planks cleated together ” had been placed across the opening for the purpose, as defendants’ assistant superintendent testified, “ for people to walk over ’ ’; that plaintiff had complained of their removal to Mr. Warshaw before the accident, and nothing was done about it; that the shoulder of the trench was not firm enough to support plaintiff, and that the trench was in no wise supported. Most of those matters are not even referred to in the majority opinion.
Not only did plaintiff establish a prima facie case upon common-law principles, but the court’s additional instructions also allowed the jury to find defendants negligent if they violated their contractual undertaking, and if their failure to perform said undertaking was the proximate cause of the accident.
The judgment should be reversed, the complaint reinstated, and a new trial ordered, with costs to abide the event.
Chief Judge Desmond and Judges Dye, Fuld, Van Voorhis and Foster concur with Judge Burke ; Judge Froessel dissents in an opinion.
Judgment affirmed.