■ IRENE LOCKER, as Executrix of HERBERT LOCKER, Deceased, Appellant, v FORD MOTOR COMPANY, LINCOLN-MERCURY DIVISION OF FORD MARKETING CORPORATION, et al., Respondents. — Judgment of the Supreme Court, New York County (Shainswit, J.), entered on November 9, 1981, which dismissed the plaintiff's complaint at the conclusion of the presentation of her case to the jury, is reversed, on the law, and the matter remanded for a new trial, with costs and disbursements to abide the event. The instant action is founded in wrongful death allegedly caused by defective brakes in a new Mercury Comet purchased the preceding day from defendant Dursi-Fordham Lincoln Mercury, Inc., and manufactured by defendant Ford Motor Company. The first trial of this matter in April of 1981 resulted in a mistrial. On the retrial, the court, at the conclusion of the presentation of the plaintiff's case to the jury, granted the defendants' motion to dismiss the complaint against them. The plaintiff is appealing this ruling. The decedent, 62 year old Herbert Locker, was the plaintiff's husband. On March 27, 1974, he took delivery of his new automobile. He drove the car back to his home in Ardsley, New York. That evening, he drove around the neighborhood, at which time he became concerned with the vehicle's operation. The following day, after a telephone conversation with a Dursi-Fordham salesman, he set out to bring the automobile back for inspection and servicing. He was subsequently discovered slumped over the wheel of his vehicle. The car, having traversed the distance of the sidewalk-driveway to the Dursi-Fordham establishment, had come to rest adjacent to the service department entrance. Although the vehicle had collided into the wall at a speed of between 5 and 20 miles an hour, there is no claim that Locker was killed as a result of impact injuries. Rather, the autopsy reported that death was due to "occlusive coronary arteriosclerosis." According to the plaintiff, the decedent's fatal heart attack was brought about by the significant stress which he suffered when the automobile's braking system malfunctioned. However, the court, in dismissing the complaint, held that while there was evidence that the brakes were susceptible to failure, it was mere conjecture and speculation as to whether they, in fact, did not work properly at the time in question. The court also found a lack of proof that the decedent, who had a long-standing heart condition, became so frightened by the brake failure that he sustained a heart attack. While the decedent did have some history of heart trouble, it was not a history that included a recent heart attack. In 1952, he had pericarditis, an inflammation of the heart muscle, and was away from his job for approxi-

mately five weeks. For a period of time in 1965, he took medication for high blood pressure. After undergoing a fainting spell in 1970, he was hospitalized for 10 days for observation. Upon release, his routine was not restricted in any way; he was neither on a prescribed diet nor on medication. He was employed full time as a sales representative and, in all respects, led a busy, active life. This was the situation which existed on the date of his death. In addition, he exhibited none of the symptoms of an impending heart attack in the days and hours preceding his death. The pathologist testified that despite the fact that Locker had had arteriosclerosis of the coronary artery and an enlarged heart, there was no indication of recent infarction or congestive heart failure. Moreover, the fatal attack did not arise from progressive arteriosclerotic disease. Rather, it was the result of cardiac arrythmia, an electrical death, most likely produced by sudden significant stress. Plaintiff's expert witness, Dr. Martin Bloomfield, a cardiologist, largely confirmed the pathologist's assessment. However, the court, on the ground that it would invade the province of the jury, did not permit him to give his opinion that the decedent must have experienced significant stress immediately before the fatal heart attack or that brake failure could constitute such stress. The automobile's brakes were a manual front-disc type with a warning light to provide notice of malfunction. Mrs. Locker stated that on the date of purchase, she observed a red light go on while she was in the vehicle. Thereafter, the decedent telephoned Dursi-Fordham and, according to one of its salesmen, was advised to bring in the car to the service department so that its brakes could be checked. At the accident scene, a member of the New York City Police Department's Accident Investigation Squad examined the fluid inside the master brake cylinder, as well as the lines leading from there, but did not discover any leaks. He installed a decelerometer, then accelerated slowly to 20 miles per hour and rapidly applied the brake pedal. The automobile stopped within an acceptable distance and time. The procedure was repeated with the emergency brake, and again the car's brake operated properly. However, an Allstate property damage adjuster, who tested the vehicle on the company's premises on May 16, 1974, found the brakes to be "spongy". He was able to stop the car only with difficulty and noted that the braking system was defective. As a consequence of his report, Allstate retained Albert Del Vecchio, chairman of the Mechanical Engineering Department at Manhattan College, to inspect the brake failure. Del Vecchio, after trying out the brakes and checking for fluid leak (there was none), removed the master cylinder and took it to Manhattan College for laboratory testing. It did not comply with established standards in all five experiments performed. Del Vecchio disassembled the master cylinder, eventually determining that the seals, which were soft and one of which was undersized, were the cause of the problem. It was his judgment that the condition involved a manufacturing defect and was present in the vehicle at the time of Locker's death. Louis E. Howarth, a mechanical engineer hired by the plaintiff, repeated the tests conducted by Del Vecchio and also found substandard performance. He asserted that there was another manufacturing defect, this one imposed during the honing process and involving longitudinal scratches in the bore of the cylinder. In view of the foregoing evidence, the plaintiff has made out a sufficient prima facie case to warrant submission of the case to the jury, and dismissal of the complaint was improper. As this court declared in *Archie v Todd Shipyards Corp.* (65 AD2d 699, 700): " 'Proof of defendant's liability may be established by circumstantial as well as by direct evidence * * * [w]here, as here, reasonable minds might differ concerning the legitimate inferences to be deduced from the circumstances shown, it is for the jury to draw such inferences. ' " (See, also, *Juiditta v Bethlehem Steel Corp.,* 75

AD2d 126.) In the instant situation, the jury could reasonably have decided that the braking system was defective and that its failure caused Herbert Locker to undergo significant stress, thereby instigating his fatal heart attack. Moreover, a "plaintiff in a wrongful death action is not held to as high a degree of proof as a plaintiff in a personal injury action and is entitled to benefit from every favorable inference which can reasonably be drawn from the evidence in determining whether a prima facie case has been made out" (*Rivenburgh v Viking Boat Co.,* 55 NY2d 850, 851-852). Plaintiff also challenges certain evidentiary rulings made by the trial court. However, testimony regarding the deceased's complaints concerning the condition of the brakes which he purportedly made to the Dursi-Fordham salesman in their telephone conversation of March 27, 1974 would have been hearsay and was thus appropriately disallowed. The court further correctly declined to admit into evidence the Ford product problem report, since the information contained therein is not only confusing but does not appear relevant to demonstrate the validity of the plaintiff's allegations. As to the court's refusal to permit Dr. Bloomfield to provide his expert medical opinion that Locker's death was due to sudden significant stress and that the car's brake failure could, in fact, produce such stress, excluding this evidence was error. The testimony which the plaintiff was attempting to elicit here was within the particular technical knowledge of the witness, a cardiologist, and should have been admitted. Concur — Sullivan, Ross and Milonas, JJ.

Murphy, P. J., and Kupferman, J., would affirm on the opinion of Shainswit, J., at Trial Term.