■ Teresa Brito, as Guardian ad Litem of Joao Brito, et al., Respondents, v Manhattan and Bronx Surface Transit Operating Authority et al., Appellants.—Judgment, Supreme Court, New York County (Alfred Toker, J.), entered June 13, 1991, which, following a jury trial, awarded damages to plaintiffs Teresa Brito, guardian ad litem of Joao Brito, and Maria Carlos Brito, his wife, in the reduced sums of $5,757,904 and $725,000, respectively, unanimously reversed, without costs, on the law, and a new trial is directed.

On the afternoon of June 29, 1988, Joao Brito was found lying in a crosswalk at the corner of Bethune and Greenwich Streets in Manhattan, immediately after a bus, owned by defendant Manhattan and Bronx Surface Transit Operating Authority (MABSTOA), and driven by defendant Donald C. Thompson, made a right turn into the crosswalk, and proceeded in a northerly direction. The 61-year-old Mr. Brito sustained serious brain damage, as well as fractures of various bones in his right foot, and was rendered incapable of testifying at the trial. Since there were no witnesses to the event which caused Mr. Brito's injuries, the plaintiffs were compelled to prove their case through circumstantial evidence.

This proof included testimony given by Walter DeCastro, a tractor-trailer driver who was unloading merchandise from his truck across the street, and who observed the bus, traveling at

approximately 10 to 15 miles per hour, make the right turn. Mr. DeCastro testified that, immediately after the bus passed, he noticed a pedestrian lying in the crosswalk, and that he ran after the bus to inform the defendant driver of the accident. A bag of crushed groceries was found next to the injured pedestrian, who was bleeding from both ears, and some produce from the bag was smeared in the direction traveled by the bus, whose right rear tires bore traces of the same food particles.

We have examined the record, including the testimony of Walter DeCastro; Robert Monahan, a MABSTOA supervisor who was riding the bus to evaluate defendant Thompson's driving; Thompson himself; three medical experts introduced by plaintiff and one called by defendant; P.O. Ismael Ramirez, the officer who first arrived at the scene of the accident; and Paul Challice, defendant MABSTOA's director of transportation training; and have concluded that plaintiffs established a prima facie case based upon circumstantial evidence.

It has long been recognized that, in circumstantial cases, the possibility that an accident may have been caused by factors other than defendant's negligence does not mandate a conclusion that plaintiff has failed to make out a prima facie case (Ingersoll v Liberty Bank, 278 NY 1, 7). Rather, "[i]t is enough that [plaintiff] shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred" (supra, at 7; see also, Stein v Palisi, 308 NY 293; Snell v MVAIC, 34 AD2d 872). Further, in determining whether plaintiffs have established a prima facie case, the evidence must be viewed in the light most favorable to the plaintiffs, and every favorable inference which can reasonably be drawn therefrom must be afforded them (Sagorsky v Malyon, 307 NY 584, 586; Candelier v City of New York, 129 AD2d 145). Finally, where, as here, the victim plaintiff is unable to testify, he is not bound to the same standards of proof required of an injured party who can do so (Noseworthy v City of New York, 298 NY 76, 80; Stein v Palisi, supra, at 297).

In addition to the observation of plaintiff-pedestrian's body in the crosswalk immediately after defendant's bus had completed its turn, and the link between the crushed produce and the bus, the evidence in the case at bar consisted of medical opinions that the fractures to plaintiff-pedestrian's right foot, which included the bone at the very top, were "crush injuries" that could not have been caused by a typical fall, and that the brain damage sustained by plaintiff-pedestrian was diffuse and

affected four of the six lobes of his brain, a condition that could neither have been caused by a stroke nor a fall. In reaching our conclusion that a prima facie case of negligence was circumstantially established, we have also taken into account the proximity and timing of the bus' movement *(see, Scantlebury v Lehman,* 305 NY 713; *see also, Jamison v Walker,* 48 AD2d 320).

We are nevertheless persuaded, however, that a new trial is warranted, in light of the trial court's instruction to the jury pursuant to New York City Traffic Regulations § 30 (a) (11 RCNY 4-03 [a] [1] [i]), which provides as follows: "[V]ehicular traffic facing [a green light] may * * * turn right or left * * * [b]ut vehicular traffic, including vehicles turning right or left, *shall yield the right of way * * * to pedestrians lawfully within the intersection or an adjacent crosswalk at the time [the green light] is exhibited."* (Emphasis added.)

In the absence of evidence that the pedestrian-plaintiff was actually in the crosswalk when the bus began its turn, this instruction assumed a critical fact which was unduly prejudicial to defendants' case. Although witnesses testified that plaintiff was in the crosswalk *after* having apparently been struck by the bus, this testimony could not constitute a factual basis for the charge, since the critical question was where he was when the bus first began to turn *(see, Fannon v Metropolitan Transp. Auth.,* 133 AD2d 211; *Perrin v Winne,* 123 AD2d 610).

We have examined the balance of defendants' claims and find them to be without merit. The trial court gave proper curative instructions regarding references to Thompson's driving record, and defendants' appellate claims with respect to MABSTOA's training manuals were unpreserved for review *(see, McCummings v New York City Tr. Auth.,* 177 AD2d 24, 28, *lv granted* 183 AD2d 1111). Concur—Ellerin, J. P., Wallach, Ross and Kassal, JJ.