OPINION OF THE COURT
David Goldstein, J.
This memorandum is to amplify and clarify a decision rendered during trial, at the close of plaintiff’s case, granting defendant’s motion to dismiss for the failure to make out a *341 prima facie case. The court had initially reserved decision and, after submitting the case to the jury to preserve the record for future appellate purposes, it granted the motion to dismiss.
Plaintiff, a carpenter by trade, had left work early on August 27, 1992, at about 3:30 p.m. He was on his way home, when he stopped for a drink at defendant’s store, where he had previously done some carpentry work. Victor Vargas, the store manager, greeted him, advising that he was glad to see him because they needed some work done on the floor. Plaintiff went to the back of the store and bought two beers, one for himself and one for Murmullio, "a neighborhood fix-up guy,” who hung out in the store and who told plaintiff that one area of the floor was pitched and that water accumulated there.
After plaintiff had paid for the beers, he went to look at the pitched portion of the floor. He was backing up, facing the register, when someone told him that the pitched area was to the right. Without looking, he took a side-step to the right and began to pivot to his right, at which point, Abel, defendant’s employee, stepped on plaintiff’s foot, which caused him to fall, injuring his ankle.
It is claimed that Abel was coming from plaintiff’s rear right, from a cold room, located some seven feet away. Admittedly, there was no defect in the floor which contributed to the fall. According to plaintiff, Abel, who was concededly acting within the scope and in the course of his employment, was negligent because there was enough room to have gone around without stepping on plaintiff’s foot.
However, there was no testimony to in any way describe the manner by which Abel approached — nothing in relation to the degree of care exercised by him. Plaintiff did not see Abel before he stepped to the side into Abel’s path. There was no testimony that Abel rushed or hurried in his approach, nor was there any proof that he was carrying something or not looking or was otherwise careless. Plaintiff did not even see .Abel before the accident — he looked down and saw Abel’s foot on his as he fell to the floor.
In my view, on the meagre record adduced at trial, plaintiff failed to make out a prima facie case. In order to establish a cause of action based upon negligence, it is necessary to demonstrate both the existence of a legal duty and the breach of that duty, by an act or omission which falls below the standard of care which may be expected of a reasonably prudent person in the same position.
Insofar as applicable here, there was no proof of any conduct by Abel prior to the accident, from which one could conclude *342 that he did not act or proceed in a reasonably prudent manner, other than the fact of the accident itself. The jury was left to speculate on that issue, which it may not be permitted to do. There was no proof that he rushed or hurried down the aisle, nor that he was carrying something or was not looking where he was going. Nor was there testimony that this was deliberate, or otherwise to permit the trier of the facts to conclude that there had been a failure to exercise due care, or some other actionable conduct.
The mere occurrence of an accident, standing alone, does not result in the imposition of liability. Stated otherwise, not every accident is compensable. In the usual case, it is plaintiff’s burden to demonstrate conduct which falls below the standard of care which one might reasonably expect from the hypothetical reasonably prudent person. This, plaintiff has failed to do.
It is plaintiff’s position that the mere occurrence of the accident supports a recovery on the facts of this case. In doing so, essentially, plaintiff applies the doctrine of res ipsa loquitur to the facts of this case. In order for the doctrine to be applicable, a party must establish the following elements: (1) the event must be of a kind which ordinarily does not occur in the absence of someone’s negligence; (2) it must be caused by an instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff (Corcoran v Banner Super Mkt, 19 NY2d 425, 430, mod on remittitur 21 NY2d 793 [quoting from Prosser, Torts § 39, at 218 (3d ed)]; see also, Ebanks v New York City Tr. Auth., 70 NY2d 621; Dermatossian v New York City Tr. Auth., 67 NY2d 219; Weeden v Armor El. Co., 97 AD2d 197).
However, as plaintiff conceded on the record several times, this is not a res ipsa case. Each of the critical elements for the applicability of the doctrine is lacking here. Firstly, this was not an event which ordinarily does not occur in the absence of negligence. There are certain occurrences which one might consider sufficiently recurring as to be incidental to the usual routine of life in our society, and, while one might strive to avoid them, their occurrence is not necessarily actionable without some proof of negligence. A few examples come to mind — accidental bumping into another while walking or in a crowded airport or terminal; getting up from a table in a crowded restaurant and accidentally striking one with the back of the chair as one stood up; bumping into another customer with a shopping cart in a supermarket; accidentally *343 stepping on the back of someone’s foot while walking behind a person; or, as here, accidentally stepping on someone’s foot as a person backed or turned into one’s path. What is lacking in this case is any proof to determine whether this was purely accidental on Abel’s part and, therefore, not actionable, or whether some degree of fault or responsibility may be attributed to him. However, without some proof bearing upon the issue, evincing a failure to exercise due care, a burden which plaintiff must satisfy, the jury was left to speculate. This it may not be permitted to do. In my view, the absence of such . proof impels the conclusion that plaintiff did not establish the breach of a legal duty in this case.
Secondly, as plaintiff conceded upon oral argument, this was not an event caused by an instrumentality within the exclusive control of the defendant. Moreover, by plaintiff’s own account, the occurrence may have been at least in part due to voluntary action or contribution on his part, when he took a side step to the right, into the direction Abel was walking or approaching.
Nor, as this court held on the record at the close of plaintiff’s case, is the situation here or facts adduced at all adequate for an inference of negligence to be drawn. Simply stated, insufficient proof has been shown to permit an inference of negligence on this record. As the court attempted to delineate in its decision granting the motion to dismiss, in each of the reported decisions where an inference of negligence was drawn, detailed facts were adduced which compelled a particular conclusion, both in terms of causation and a departure from ordinary care. Plainly, ours is not such a case.
Thus, in Stein v Palisi (308 NY 293), the Steins and their children had been vacationing in one of a group of bungalows, situated on the side of a private dead-end access road, which was separated from the highway and the main road. The road was made of cinders and stones. On the day of the accident, the Steins’ 19-month-old baby was playing with four children on the lawn in front of the second bungalow, when defendant’s taxicab came down the dirt road "pretty fast”, passing the spot where the children were playing and continuing up the cinder road to the third or fourth bungalow. Immediately after the taxi began to drive away, the baby’s sister and cousin, who had gone to the bungalow to ask about dinner, and who were sent back to look after the baby, began screaming. A neighbor, some 50 feet away, heard the screams and saw the taxi departing along the private road, going "very fast”. The baby was found half on the grass and half in the road, bloody, his clothes torn *344 and dirty, with gravel, oil and grease stains. In addition to a fractured skull, the infant sustained assorted abrasions and lacerations, with dirt and cinders ground into them. There was no evidence of any other vehicle or object in the area.
Under the facts adduced in that case, the Court of Appeals in Stein (supra) held that a jury could properly find that the taxicab had made contact with the baby and dragged or pushed him through the dirt and cinders: "In other words, from the facts and circumstances in this case, the jury had the right to infer that the only way the child could have received its injuries was through contact with the taxicab, and from those same facts and circumstances it had the right to infer that defendant was negligent.” (Supra, at 298.)
Similarly, in Locker v Ford Motor Co. (91 AD2d 510), the proof at trial established that, after plaintiff’s decedent had taken delivery of a new automobile, he drove it to his home and around his neighborhood, at which time he became concerned with the vehicle’s operation. The next day, he set out to bring the vehicle in for servicing. Later, decedent was found slumped over the wheel. An autopsy disclosed that his death resulted from a heart attack, not the vehicle’s impact with a wall while traveling between 5 and 20 miles per hour. According to plaintiff, the heart attack resulted from the stress associated with the malfunctioning of the vehicle’s braking system. In dismissing the complaint, the trial court had held that, notwithstanding evidence of brake failure, it was speculative to conclude that the brakes did not function properly at the time of the accident. Although police tests found the brakes within acceptable standards, an insurance property adjuster who had tested the vehicle, found the brakes "spongy”, and concluded that the brakes could stop the vehicle only with difficulty. He noted a defect in the braking system, opining that there was a manufacturing defect which was present at the time of decedent’s death.
The Appellate Division reversed and remanded the case for a new trial, holding that a jury could have concluded that there was a defect in the braking system, the failure of which could have induced sufficient stress to cause the fatal heart attack, especially bearing in mind the lower burden of proof imposed upon a plaintiff in a wrongful death action. In doing so, it held that, where reasonable minds could differ on legitimate inferences to be drawn, it is for the jury to draw such inferences. (See also, Archie v Todd Shipyards Corp., 65 AD2d 699.)
*345 In Allen v Stokes (260 App Div 600), an action was brought to recover for the wrongful death of an 11-year-old boy. Defendant’s taxicab was seen, travelling in New York City, northbound on Seventh Avenue, between 115th and 116th Streets, with an object wedged between the bumper and the radiator. When defendant was stopped, it was ascertained that the object was the body of a boy, who died a short time later. Defendant denied any knowledge as to how the body had gotten onto the front of his vehicle, but he did smell from alcohol and admitted having been drinking. One witness testified that defendant had come from the direction in which the decedent was last seen alive.
The Appellate Division, First Department, held that, although the evidence was "meagre”, a jury could infer that an accident had occurred involving a collision between defendant’s vehicle and decedent, as a pedestrian, at some point east of Lenox Avenue and 115th Street. Notwithstanding the absence of any direct evidence, it concluded that, fairly and reasonably, the circumstances led to that conclusion and tended to exclude any other hypothesis. The following observations and holding is instructive and of particular significance here: "We realize that in an action of this nature the burden of proving defendant’s negligence and the proximate cause of the accident is on the plaintiff. These essential elements may be established, however, by circumstantial, as well as direct evidence. It is sufficient if the proof includes sufficient positive evidence of facts from which an inference or conclusion of negligent conduct may be drawn.” (Supra, at 603 [emphasis added].)
This latter observation distinguishes our case from each of the cited cases. In each, there were sufficient facts adduced to permit, if not require, that an inference or conclusion of negligence be drawn. In the within action, unlike the foregoing cases, no facts have been shown to warrant a conclusion that there was negligent conduct, other than the mere occurrence of the accident, which, as noted, is insufficient. To hold otherwise would inappropriately apply the doctrine of res ipsa loquitur to the facts of this case, with an inference or presumption of negligence from the mere happening of the event. This, in my view, would be improper and well beyond traditional concepts of negligence or tort liability.
Accordingly, upon the failure to adduce affirmative proof of conduct which fell below the standard of care expected of a reasonably prudent person in the same position, I conclude on this record that plaintiff failed to establish the breach of a *346 legal duty critical to a prima facie case. This failure of proof requires that defendant’s motion be granted at the close of plaintiffs case. Accordingly, the verdict is set aside and vacated and the complaint is dismissed.