OPINION OF THE COURT
Louis C. Benza, J.
*626 Claimant brought this action on behalf of his deceased minor son, Aaron Boland, and his minor daughter, Jennifer Boland, on the ground that the defendant, the State of New York, was negligent in its operation of the State’s Central Registry Child Abuse Hotline. The factual background of the case is reported in Boland v State of New York (161 Misc 2d 1019, affd 218 AD2d 235).
The court concludes that the evidence presented at the trial of this matter that Kim Mariotti’s failure to properly forward the report of child abuse to the proper county Child Protective Services unit constituted not only a ministerial error but a breach of the special duty owed claimant’s children, and said negligence caused a delay in the investigation of the report of child abuse against Aaron and Jennifer by their stepmother, Penny Boland. The negligence of the State has been established at trial by a preponderance of the credible evidence. The evidence produced at trial which established said negligence need not be reiterated here as it is constituted by all of the findings made both by this court and the Appellate Division in their respective filed opinions (see, Boland v State of New York, 161 Misc 2d 1019, affd 218 AD2d 235, supra). The pertinent question remaining to be decided is whether the State’s negligence in breaching its duty to properly report the acts of child abuse to the proper county Child Protective Services unit, preventing an investigation from being conducted within 24 hours of receipt of the complaint, constituted the proximate cause of Aaron’s and Jennifer’s injuries and Aaron’s subsequent death from his injuries. The issue of proximate cause does not resolve itself by a review of evidence to determine if a positive action taken by a State social worker was based on reasonable, sound professional judgment (Tango v Tulevech, 61 NY2d 34, 41; Youngberg v Romeo, 457 US 307, 322-323). Here, we are asked to determine proximate cause based on the State’s failure to timely investigate a report of child abuse. A different and more difficult analysis is required here.
The duty to Aaron and Jennifer which was breached by the State was to properly report the incident of child abuse so that it could be investigated within the time specified in the statute, which requires the investigation to be made within 24 hours from receipt of the complaint so that if any imminent danger to the child is perceived, the child can be protected by removing him or her from the source of that danger (Social Services Law § 424 [6]; § 417). The parties have stipulated that the fatal injuries Aaron incurred from his stepmother, Penny *627 Boland, occurred on January 25, 1989 between the hours of 8:00 a.m. and 10:00 a.m. The question of proximate cause in this case is distilled to whether the presence of a Child Protective Services investigator at the Boland residence within the 24-hour period would have prevented Aaron’s death. Certainly, there is no argument here that the State’s Social Services Law sets down a strict liability standard for injuries resulting from the State’s negligence in failing to properly execute its responsibilities under the statute.
The claimant, in his posttrial memorandum, contends that from the evidence, this court can conclude, to the exclusion of all other reasonable alternatives, that one of the following five actions would have been taken by the State investigator if that investigator had performed an initial investigation within 24 hours as required by the statute:
1. Immediate emergency removal by police or child protective workers, for placement out of the home (Social Services Law § 417; Family Ct Act § 1024 [a]).
2. Emergency removal for a medical examination resulting in a medical opinion of malnutrition, physical abuse and/or neglect (Social Services Law § 417; Family Ct Act § 1024 [a]).
3. Emergency removal by Family Court order (Family Ct Act § 1022).
4. Removal by consent of Penny Boland for a medical examination and/or temporary placement with a relative (Family Ct Act § 1021).
5. Issuance of a Family Court order of protection together with an order that child protective services supervise the family and provide services and/or counseling (Family Ct Act §§ 1029, 1056).
The claimant further contends that had any of the above actions been taken by the State, Aaron’s death would have been prevented.
There is no direct proof in the case or from a reading of the cited statutes that mandated the State investigators to carry out any of the stated options simply based on an unsupported report of child abuse. In fact, the evidence is to the contrary. In order to implement any of the five options, the statute required that an investigation be performed by State investigators or other persons authorized by the statute exercising their discretion, to determine, based on their findings, whether the children were in imminent danger. Whether Penny Boland would have consented to the removal of the children had an investiga *628 tor appeared at her door before January 25 would be mere speculation or conjecture absent any testimony from her. This court, of course, can deduce reasonable inferences from the evidence that may reasonably establish facts in dispute (Stein v Palisi, 308 NY 293; Ingersoll v Liberty Bank, 278 NY 1; Brito v Manhattan & Bronx Surface Tr. Operating Auth., 188 AD2d 253). The fact in dispute here is whether an investigation by Child Protective Services if conducted before January 25 would have caused the removal of the children from the Boland residence and thus averted the death of Aaron or additional injuries to Jennifer. The court must also review the evidence to determine if the mere presence of Child Protective Services investigators for the purpose of investigating abuse of the Boland children would have prevented the death of Aaron. On the latter inquiry there is a minimal amount of evidence from which one may reasonably infer what effect a visit by Child Protective Services investigators would have had on Penny Boland’s subsequent treatment of Aaron and Jennifer. Penny Boland was not restrained from continued abuse of the children after the confrontation took place at the bus stop with her neighbors Linda Siesto and Tara Reeve. Here, Aaron specifically complained about his “boo-boos” and Siesto and Reeve did question Penny Boland about the condition of the children. Although these inquiries were not made by an authoritative official, it should have raised in Penny Boland some suspicion that people were watching her. In any event, she still continued to abuse the children and eventually delivered the lethal blow which killed Aaron. When Child Protective Services Investigator Rivera arrived at the Boland residence on January 25, he had seen a copy of the DOS 2221 report and prepared his own previsit report, both of which furnish very little information. Without first interviewing Penny Boland, he could not gain any information on the history of the family, and without information as to who made the complaint, he could not obtain more details as to why the complaint was made. With so little information at his disposal, Investigator Rivera testified at trial, he did not, based on this information, intend to remove the children from their home. For the purpose of determining proximate cause, the court concludes, however, that had Rivera gone to the Boland residence earlier and seen the Boland children, he could have discovered the old injuries described in Dr. Eckert’s examination of Aaron and would have observed the cropped hair and cut eyelashes and the fact that both children were undernourished. Since Aaron had no inhibition in telling *629 his neighbors about his “boo-boos”, we can easily infer that he readily would also have told Investigator Rivera about them. Even if we could infer that Jennifer’s old injuries could have been observed and that she would have told Rivera what she told him when she was interviewed by him at the hospital on January 25 — i.e., that Penny Boland had hit her and Aaron with a belt, had hit them on the hand with a wooden spoon, and had thrown her (Jennifer) against a door and Aaron to the floor — absent Rivera being asked, at trial, whether these findings and history would have been sufficient to constitute imminent danger to the children and cause him to seek removal of the children from their stepmother’s control, the court cannot conclude that these findings are sufficient to constitute imminent danger requiring removal of the children and placement into protective custody. Rivera testified that he had the authority to remove the children without their parents’ approval if he found that they were in imminent danger. Reish’s testimony further substantiated Rivera’s initial determination not to remove claimant’s children based on the information contained in the initial report. Officer Reish testified that even after investigating the injuries sustained by Aaron and interviewing Mrs. Boland at the hospital, he (Reish), Rivera and Kepner believed further investigation was required before any determination could be made as to whether claimant’s children had been abused. It was not until January 26 that Reish finished his investigation and concluded that child abuse had, in fact, occurred.
The authority to remove children from abusive parents has been given by the Social Services Law to selective people, all of whom have been trained to recognize known factors which signal endangerment to a child. These selective people include social workers, policemen, or other trained professionals who, because of their special medical knowledge, are more adept at linking injuries to cause. In determining causation in this type of case, the fact finder cannot draw inferences based on common knowledge or experience (Dunham v Village of Canisteo, 303 NY 498; cf, Mitchell v Coca-Cola Bottling Co., 11 AD2d 579), so it would appear that, here, any conclusion reached on the issue of causation must be gleaned from the testimony of individuals who mirror more closely those persons authorized by the statute to investigate and make the required judgment calls based on their findings obtained at the initial interview. In cases of the type presented here, it is difficult to obtain testimonial evidence as to what a person may or may not do *630 when presented with a situation that requires a determination based on the use of a particular individual’s discretion. At best, we can see from Walker’s, Reish’s, Rivera’s and Cronin’s testimony that although removing the children was authorized by statute, this authority was not used indiscriminately but only after a thorough assessment of the facts. As recognized in Tango v Tulevech (61 NY2d 34, supra), a parent’s interest in maintaining custody and care of his/her children has constitutional support (Stonley v Illinois, 405 US 645) and a parent has a right to sue for violations of that interest (Tango v Tulevech, supra). Under the facts presented here, when reviewed against the requirements of the statute, which authorizes removal only upon a finding of imminent danger, Rivera’s and Cronin’s decision not to remove claimant’s children based on the initial reports constitutes reasonable judgment which did not deny the children the protection required by the special relationship established (Mastroianni v County of Suffolk, 91 NY2d 198), and said decision, based on the information known, was not “a substantial causative factor in the sequence of events leading to [Aaron’s death]” (see, Ether v State of New York, 235 AD2d 685, 686). The medical testimony concerning Aaron’s injuries and Penny Boland’s subsequent statements which eventually led her to be convicted of second degree manslaughter for Aaron’s death are of no probative value on the issue of proximate cause. As previously stated, the removal of Jennifer from parental custody was predicated essentially upon Aaron’s injuries and adds little light on the issues to be decided.
The initial assessment worksheet and conclusion report prepared by Rivera is of little value in evaluating what he would have done had he been the Child Protective Services investigator originally assigned to the case and had he called on Penny Boland before January 25. The report itself specifically states what Rivera relied on in making his determination of the risk factors he found in Penny Boland’s household requiring referral. All of the risk factors were reported as found after the January 25 date.
From this pallid palette of direct testimonial evidence, and applying a standard which realizes that proof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis (Schuster v City of New York, 5 NY2d 75, 88; Cornbrooks v Terminal Barber Shops, 282 NY 217, 223), this court cannot, with logic and reason, conclude that the claimant has, by a preponderance of the credible evidence, established that the State’s negligence con *631 stituted a substantial factor in causing Aaron’s death. As to Jennifer, there was no proof that she sustained any injuries because of the delay in the investigation. As tragic as Aaron’s death was, the evidence failed to establish that the State’s failure to investigate the complaint of child abuse within the 24-hour period required by the statute constituted a proximate cause of his death. Accordingly, the State’s motion to dismiss made at the conclusion of trial, upon which the court reserved decision, is now granted and the claim is hereby dismissed. All other motions upon which the court reserved decision are now hereby denied.
[Portions of opinion omitted for purposes of publication.]